ELEANOR DORIS PETERSON v. WINN-DIXIE OF RALEIGH, INC., AND PEPSI-COLA COMPANY OF FAYETTEVILLE, INC.

No. 7212SC17

(Filed 29 March 1972)

1. **Rules of Civil Procedure § 56— motion for summary judgment — consideration of the record**

     In ruling on a motion for summary judgment, the court must look at the record in the light most favorable to the party opposing the motion.

2. **Rules of Civil Procedure § 56— summary judgment — affidavit statements not based on personal knowledge**

     Statements in plaintiff's affidavit as to why she "thinks" cartons of soft drinks in a grocery store display fell cannot be considered in ruling on defendant's motion for summary judgment, the

statements not being made on personal knowledge and plaintiff not having affirmatively shown that she is competent to give an opinion as to why the drinks fell.

3. **Rules of Civil Procedure § 56— motion for summary judgment — reliance on complaint**

Plaintiff may not rely on the bare allegations of her complaint where defendants' motions for summary judgment are supported as provided in Rule 56.

4. **Negligence § 57— injury from soft drink display in grocery store — summary judgment**

Summary judgment was properly allowed in favor of defendants, a soft drink company and a grocery company, in an action to recover for injuries allegedly sustained by plaintiff when she picked up a carton of soft drinks from a self-service display in a grocery store and some of the cartons of bottles fell to the floor, where plaintiff offered no competent evidence of negligence by defendants in the arrangement or maintenance of the display, and defendants' evidence indicated a careful and proper arrangement of the display and proper, periodic inspection and maintenance of the display.

APPEAL by plaintiff from *Cooper, Judge,* 21 June 1971 Session of Superior Court held in CUMBERLAND County.

Plaintiff instituted this action to recover damages for personal injury alleged to have been caused by negligence of the defendants in the setting up and maintenance of a soft-drink display provided for customers' use in self-service purchasing of soft-drinks in six-bottle cartons in the Winn-Dixie Store at Talleywood Shopping Center in Fayetteville.

After answers were filed by defendants, plaintiff took the deposition of the manager of the Winn-Dixie store involved and the deposition of the route salesman of Pepsi-Cola who served the Winn-Dixie store involved. Defendants took the deposition of plaintiff. Thereafter, defendants filed motions for summary judgment and after due notice the motions were heard upon the pleadings, the three depositions and arguments of counsel. The trial court rendered summary judgment for defendants and plaintiff appealed.

*A. Maxwell Ruppe for the plaintiff.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Ronald C. Dilthey, for Winn-Dixie of Raleigh, Inc.*

*Quillin, Russ, Worth & McLeod, by Walker Y. Worth, Jr., for Pepsi-Cola Company of Fayetteville, Inc.*

BROCK, Judge.

[1]  When a motion for summary judgment is made, the court must look at the record in the light most favorable to the party opposing the motion. *Patterson v. Reid,* 10 N.C. App. 22, 178 S.E. 2d 1. Therefore, in this case we must view the record in the light most favorable to plaintiff.

The record, in the light most favorable to plaintiff, tends to establish the following: On 30 March 1968, defendant Winn-Dixie operated a retail, self-service grocery store in Talleywood Shopping Center in Fayetteville, and maintained for sale soft-drinks supplied by defendant Pepsi-Cola. On 29 March 1968, defendant Pepsi-Cola through its agent filled the soft-drink display in the Winn-Dixie store with 16 ounce "Pepsis," 10 ounce "Pepsis," 10 ounce "Mountain Dew," and 10 ounce "Diet Pepsi," all in six-bottle cartons. The cartons were stacked two and three cartons high. The bottom row of cartons sat upon a shelf. A plastic strip was placed on top of the bottom cartons and the second row of cartons sat upon the plastic strip. Another plastic strip was placed on the top of the second cartons and the third row of cartons sat upon the plastic strip. The plastic strip was so constructed that as each carton was removed the strip rolled back to the front edge of the next carton, thereby exposing the carton immediately under the one that had been removed. The cartons were stacked four to five in depth from back of the display to the store aisle.

Defendant Pepsi-Cola's agent testified:

"I filled up the display on March 29, 1968. I stacked the drinks directly on top of each other. I did not offset them. On the following Monday, it was mentioned to me that a lady had gotten cut by some drinks that had fallen on March 30, 1968. I checked my display the following Monday but did not find anything unusual about it . . . ."

At about 4:00 p.m., on 30 March 1968, plaintiff was shopping in the Winn-Dixie Store at Talleywood Shopping Center. She reached over to get a carton of Pepsi-Cola and, when she picked them up, some cartons fell to the floor and the broken glass cut her leg. Plaintiff testified in part:

"When I picked it up, the flap went back, and under the celluloid was another carton of Pepsis. The cartons that fell were the ones under and beside the one I picked up.

I didn't feel anything unusual when I picked up the carton of Pepsis. I didn't feel the carton catch on anything. I think the flap knocked the rest of them, the way they were stacked. What other reason would they fall?"

"As to what made the others fall, the only thing that could have done it was the way they were stacked. I am sure it must have been. Something was wrong, don't you think?"

"I looked at the drink display where the Pepsis were located. I did not see anything unusual about the Pepsi-Cola display, but then I wasn't looking for it. There was nothing unusual staring me in the face. I continued looking at the display until I took the carton off the display. I saw the Pepsi display from the time I approached it until I picked up the carton of Pepsis but did not notice anything unusual about the Pepsi display or the way they were stacked."

"I did not notice anything different about the stacking of these bottles on this occasion from other occasions when I have gone to the Pepsi display and removed a carton of Pepsis but since that time I have noticed different things about the way Pepsis were stacked."

Plaintiff also testified as to what she guessed was wrong:

"The cartons that fell were improperly stacked somewhere. I didn't see the improper stacking, but what else did it, could it be? I didn't look for it either. I formed my opinion as to the cause of the cartons to fall from the way they were laying on the floor all around. It had to be improperly stacked."

"I have been in there several times and bought Pepsis regularly. I did not notice anything unusual about them this day. I wasn't looking for something to be wrong. I went in like I usually do and picked up a carton. It fell because of the way it was stacked, it had to be."

She also testified as to some observations made, somewhere and sometime, after the date of the accident:

"I have noticed that one would be sitting in place like this and then two would be sitting like this, or either one would be sitting half way on the edge, against another. Whether that is different from what they were in March

I did not look to see. I did not examine them before I got hurt."

"As to whether I am guessing, I have my reasons which are that I have been back later and observed them still stacked wrong. It was very dangerous. As to the way they were stacked, there is two here and one sitting right that way and sitting to where they can fall easily; they are not stacked straight upon each other."

The local manager of Winn-Dixie testified that, in the morning of the day plaintiff was cut, he checked the soft-drink display and that, as far as he knew, the "Pepsis" were stacked in a normal fashion.

[2]   G.S. 1A-1, Rule 56(e), provides that "[s]upporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such *facts as would be admissible* in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein (emphasis added)." It seems obvious that plaintiff's affidavit (in the form of her deposition in this case) was not made on personal knowledge when she states why she *thinks* the drinks fell. Also, it seems obvious that plaintiff has not affirmatively shown that she is competent to give an *opinion* as to why the drinks fell. These phases of her affidavit cannot be considered in her opposition to summary judgment, because they do not comply with the rules. Stripped of the phrases which cannot be considered, plaintiff's affidavit shows that she saw nothing wrong with the arrangement of the soft-drink display. Her assertion that the accident would not have occurred unless something had been wrong with the soft-drink display is nothing more than a lay effort to apply the doctrine of *res ipsa loquitur* to a situation which is clearly not appropriate for the application of the doctrine.

[3]   The allegations of plaintiff's complaint are artfully set forth to allege facts sufficient to survive a motion to dismiss, but defendants' motions for summary judgment are supported as provided in Rule 56; therefore, plaintiff may not rely on the bare allegations of her complaint. *Haithcock v. Chimney Rock Co.,* 10 N.C. App. 696, 179 S.E. 2d 865. "The purpose of the Summary Judgment procedure . . . is to ferret out those cases in which there is no genuine issue as to any material fact and in which, upon such undisputed facts, a party is en-

titled to judgment as a matter of law." *Haithcock v. Chimney Rock Co., supra.*

[4] When we consider only those portions of the affidavits which can properly be considered under Rule 56, it seems clear that plaintiff has no evidence of negligence in the arrangement or maintenance of the soft-drink display. Defendants' evidence indicates a careful and proper arrangement of the display and a proper, periodic inspection and maintenance.

In our opinion, the trial judge was correct in entering summary judgment for defendants.

No error.

Judges HEDRICK and VAUGHN concur.