THOMAS EUGENE COFFER v. STANDARD BRANDS, INC.

No. 7621SC158

(Filed 21 July 1976)

1. **Food § 1— manufacturers, processors, packagers of food — negligence — burden of proof — res ipsa loquitur inapplicable**

   Manufacturers, processors, and packagers of food, and bottlers of drink intended for human consumption are held to a high degree of responsibility to the ultimate consumer to see that the food and drink are not injurious to health, and may be held liable by the ultimate consumer on the ground of negligence for injuries proximately resulting from the failure to use such care; however, the doctrine of *res ipsa loquitur* does not apply, and the burden of proof rests on plaintiff to establish negligence.

2. **Food § 1— roasted nuts — unshelled filbert — no negligence of manufacturer**

   In an action to recover for injury to plaintiff's teeth sustained when he bit down on an unshelled nut which was packaged in one of defendant's products, Planters Dry Roasted Mixed Nuts, plaintiff made no showing of negligence and introduced no proof of similar occurrences.

3. **Food § 1; Uniform Commercial Code § 15— roasted nuts — unshelled filbert — no express warranty that nuts were shelled**

   Evidence did not support plaintiff's contention that defendant breached an express warranty that mixed nuts sold by defendant in a clear glass jar were all shelled, since there was no language on the label of the container representing that the nuts were shelled and since the clear jar in which the nuts were packaged was a mere passive marketing tool and not a representation within the meaning of G.S. 25-2-313(1)(a), (b).

4. **Food § 1; Uniform Commercial Code § 15— mixed nuts — unshelled filbert — merchantability of nuts**

   The mixed nuts marketed by defendant were merchantable notwithstanding the presence of an unshelled filbert, since the presence of limited quantities of unshelled nuts does not render shelled nuts objectionable in the trade within the meaning of G.S. 25-2-314(2)(a).

5. **Food § 1; Uniform Commercial Code § 15— mixed nuts — presence of unshelled nuts — product not adulterated — merchantability**

   A certain limited number of naturally occurring unshelled filberts is permissible without rendering the product, dry roasted mixed nuts, adulterated, and as such the mixed nuts are fit for ordinary purposes and merchantable under G.S. 25-2-314(2)(c).

6. **Food § 1; Uniform Commercial Code § 15— dry roasted mixed nuts — unshelled filbert — no foreign substance — no breach of implied warranty of merchantability**

   Plaintiff who sued for injury to his teeth sustained when he bit down on an unshelled filbert which was in a package of dry roasted

---

Coffer v. Standard Brands

---

mixed nuts cannot claim that the filbert was a foreign substance, since the presence of natural impurities is no basis for liability; therefore, there was no breach of an implied warranty of merchantability.

7. **Food § 1— strict liability — defective product unreasonably dangerous to health**

In order for strict liability to obtain, the product must be not only defective but present an unreasonable danger to health.

8. **Food § 1— mixed nuts — unshelled filbert — strict liability inapplicable**

In an action by plaintiff to recover for injury to his teeth sustained when he bit down on an unshelled filbert which was contained in dry roasted mixed nuts packaged by defendant, strict liability did not apply, since the product in question was not defective, nor did it present an unreasonable danger to health and safety.

APPEAL by plaintiff from *Crissman, Judge.* Judgment entered 21 January 1976 in Superior Court, FORSYTH County. Heard in the Court of Appeals 27 May 1976.

Allegations in plaintiff's complaint are summarized in pertinent part as follows:

Defendant is a New York corporation, registered in North Carolina "for the general manufacturing of its products"; and "defendant goes on a daily and regular basis manufacture and sell its products in the State of North Carolina." On or about 1 April 1974 plaintiff purchased a bottle of "Planters Dry Roasted Mixed Nuts," a product manufactured by defendant and sold and distributed by it in North Carolina. Plaintiff purchased the product in its original and unopened container from a food store in Greensboro.

Thereafter, plaintiff opened the bottle and, as he was eating some of the nuts therefrom, he bit down on a nut that had not been shelled, resulting in damage to his teeth. He suffered great pain as a result of the incident and has incurred considerable expense in getting his teeth repaired. Defendant is liable to plaintiff on theories of negligence, breach of express warranty, breach of implied warranty, and strict liability in tort.

In its answer defendant denied the material allegations of the complaint. It further alleged additional defenses of (1) failure of the complaint to state a claim upon which relief can be granted, (2) lack of privity of contract between plaintiff and defendant, and (3) contributory negligence on the part of plaintiff.

At trial plaintiff was the only witness presented. His testimony with respect to purchasing and eating the nuts and resulting injury was substantially as alleged in the complaint. A bottle similar to the one purchased was introduced as an exhibit; also introduced was the nut complained of which was identified as an unshelled filbert. On cross-examination he testified that the bottle contained different types of nuts including filbert, cashew, pecan and almond; that they were of different sizes, some small and some larger than others.

At the close of the evidence defendant's motion for directed verdict was allowed and from judgment dismissing the action, plaintiff appealed.

*Wilson and Morrow, by John F. Morrow, for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., for defendant appellee.*

BRITT, Judge.

Did the trial court err in granting defendent's motion for directed verdict and dismissing the action? We hold that it did not.

### NEGLIGENCE

[1] Manufacturers, processors, and packagers of food, and bottlers of drink intended for human consumption, are held to a high degree of responsibility to the ultimate consumer to see that the food and drink are not injurious to health, and may be held liable by the ultimate consumer on the ground of negligence for injuries proximately resulting from the failure to use such care. *Terry v. Double Cola Bottling Company*, 263 N.C. 1, 138 S.E. 2d 753 (1964). Accordingly, a person injured by a harmful or deleterious substance in food or drink resold in the original container may recover from the manufacturer upon the theory of negligence. *Smith v. Coca-Cola Bottling Company*, 213 N.C. 544, 196 S.E. 822 (1938). However, the doctrine of *res ipsa loquitur* does not apply and the burden of proof rests on plaintiff to establish negligence. *Styers v. Winston Coca-Cola Bottling Company*, 239 N.C. 504, 80 S.E. 2d 253 (1954). Direct proof of negligence is not required and negligence may be established by relevant facts and circumstances from which

---

Coffer v. Standard Brands

---

it may be inferred. *Styers v. Winston Coca-Cola Bottling Company, supra.* Negligence of the manufacturer or processor may be established by proof of similar occurrences transpiring within reasonable proximity of time. *Tickle v. Hobgood,* 216 N.C. 221, 4 S.E. 2d 444 (1939) ; *Smith v. Coca-Cola Bottling Company, supra.*

[2]  In the instant case plaintiff made no showing of negligence, and he introduced no proof of similar occurrences. In *Tedder v. Pepsi-Cola Bottling Company,* 270 N.C. 301, 154 S.E. 2d 337 (1967), our Supreme Court held that negligence on the part of a bottler is not established by the showing that one bottle alone out of some eight million contained a deleterious substance. While the evidence in the instant case did not show the number of bottles of mixed nuts processed and packaged by defendant, the inference was that the number was substantial. We think plaintiff fell far short of establishing liability on the ground of negligence.

### BREACH OF WARRANTY

A. Privity of Contract.

The actionability of plaintiff's claims under a theory based on express or implied warranty, are limited by requirement of privity of contract. Privity still obtains in this jurisdiction and would bar any suit by an injured consumer against one other than his immediate seller unless the suit falls within one of the many exceptions to the rule. *Gillispie v. Bottling Co.,* 17 N.C. App. 545, 195 S.E. 2d 45 (1973), *cert. denied,* 283 N.C. 393, 196 S.E. 2d 275 (1973) ; *e.q., Gillispie v. Bottling Co.,* 14 N.C. App. 1, 187 S.E. 2d 441 (1972).

While the principle of privity has been eroded in this jurisdiction in cases involving food and drugs, merchandised in sealed containers, it does not appear that the principle in those cases has been completely abolished. In *Tedder v. Pepsi-Cola, supra,* the court held that because of advertising and sales promotion by the bottler addressed to the consumer the principle of privity did not apply.

In the instant case plaintiff presented no evidence of advertising and sales promotion by defendant addressed to the consumer. Therefore, we are assuming only *arguendo* that there was privity between plaintiff and defendant as we proceed to consider the questions of express and implied warranty.

B. Express Warranty.

[3]   Plaintiff contends that defendant breached an express warranty that the mixed nuts were all shelled. The evidence does not support this position. The only language appearing on the label of the container is as follows:

> "PLANTERS
> Dry Roasted
> MIXED NUTS
> no oils or sugar
> used in processing"

Nowhere does there appear a representation that the nuts contained in the jar were shelled. The Uniform Commercial Code as adopted in North Carolina, Chapter 25 of the General Statutes, mandates that in order for an express warranty to be effective, a manufacturer's representations must be a part of the basis of the bargain. G.S. 25-2-313(1)(a). Plaintiff argues that the container, a clear glass jar, which allegedly failed to disclose the unshelled filbert, was a representation within the meaning of G.S. 25-2-313(1)(a), (b). We feel that use of the jar, while revealing shelled nuts, was a mere passive marketing tool. It was not an affirmative representation and as such was insufficient to give rise to an express warranty. *Performance Mtr's Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972).

C. Implied Warranty.

First, we consider plaintiff's claim in the light of the Uniform Commercial Code and defendant's implied warranty of merchantability under G.S. 25-2-314(1). Unless excluded or modified pursuant to G.S. 25-2-316, this warranty arises as a matter of law where the seller is a merchant with respect to the goods in question under G.S. 25-2-104(1). Some basis for determining the merchantability of goods is provided in G.S. 25-2-314(2). This subsection provides as follows:

"(2)  Goods to be merchantable must be at least such as

    (a)  pass without objection in the trade under the contract description; and

    (b)  in the case of fungible goods, are of fair average quality within the description; and

(c)   are fit for the ordinary purposes for which such goods are used; and

(d)   run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e)   are adequately contained, packaged, and labeled as the agreement may require; and

(f)   conform to the promises or affirmations of fact made on the container or label if any."

We feel that the goods were impliedly warranted to be nuts, a natural incident of which were the shells. As such they were fit for the ordinary purposes under G.S. 25-2-314(2)(c). The argument could be made that the clear glass jar revealing only shelled nuts was a "promise or affirmation of fact" as provided in G.S. 25-2-314(2)(f). However, we feel that this approach is inconsistent with the nature of the goods at issue and G.S. 25-2-314(2)(c).

In assessing the merchantability of goods under G.S. 25-2-314(2)(a) thru (f), various state and federal regulatory acts are instructive. This is especially pertinent in regard to a determination of merchantability under G.S. 25-2-314(2)(a), (c).

Under G.S. 106-22(9), 106-67.7 and 106-195 the Commissioner of Agriculture and the North Carolina Board of Agriculture are empowered to make and adopt rules and regulations governing the sale of mixed nuts. *See, e.g.,* G.S. 150A-14, effective 1 February 1976. The Board has adopted certain federal standards issued under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 et seq. (1970). *See* 2 N.C.A.C. 15K.0217 (1976). These standards govern determination of the quality and merchantability of such nuts. 7 C.F.R. § 51.2(d) (1976). These standards provide that mixed nuts are to contain certain individual varieties within certain percentages. The quality of the mixture is determined by application of the respective standards of quality and merchantability for each variety represented in the mixture, 7 C.F.R. § 51.3520 (1976).

While there appear to be no standards governing the permissible limits for presence of unshelled filberts in a lot of otherwise shelled nuts, such standards do exist for peanuts.

SHELLED PEANUTS

ALLOWABLE UNSHELLED CONCENTRATION

| Peanut Variety | Allowable Unshelled | Reference |
|---|---|---|
| U.S. No. 1 Runner | 1.50% | 7 C.F.R. § 51.2710 (a) (3) (1976) |
| U.S. No. 2 Runner | 2.50% | 7 C.F.R. § 51.2712 (a) (2) (1976) |
| U.S. Runner Splits | 2.00% | 7 C.F.R. § 51.2711 (a) (2) (1976) |
| U.S. No. 1 Spanish | 1.50% | 7 C.F.R. § 51.2730 (a) (3) (1976) |
| U.S. No. 2 Spanish | 2.50% | 7 C.F.R. § 51.2732 (a) (2) (1976) |
| U.S. Spanish Splits | 2.00% | 7 C.F.R. § 51.2731 (a) (2) (1976) |
| U.S. Ex.L. Virginias | 1.00% | 7 C.F.R. § 51.2750 (a) (3) (1976) |
| U.S. Med. Virginias | 1.25% | 7 C.F.R. § 51.2751 (a) (3) (1976) |
| U.S. No. 1 Virginias | 1.25% | 7 C.F.R. § 51.2752 (a) (3) (1976) |
| U.S. No. 2 Virginias | 2.50% | 7 C.F.R. § 51.2754 (a) (2) (1976) |
| U.S. Virginia Splits | 2.00% | 7 C.F.R. § 51.2753 (a) (2) (1976) |

Average Unshelled   1.82%

The range allowable is from 1.00% to 2.50% with an average of 1.82% unshelled peanuts per unit of shelled peanuts. We find these figures highly persuasive in establishing merchantability under G.S. 25-2-314(2)(a). They serve to indicate that in the context of the peanut industry as a regulated trade, there is some tolerance for unshelled nuts in a lot of shelled nuts.

[4] Since mixed nuts are subject to the same standards as individual varieties, it logically follows that as in case of peanuts there is some tolerance in the trade for unshelled filberts as well. Thus the mixed nuts marketed by defendant were merchantable notwithstanding the presence of an unshelled filbert, since the presence of limited quantities of unshelled nuts does not render shelled nuts objectionable in the trade within the meaning of G.S. 25-2-314(2)(a).

G.S. 25-2-314(2)(c) provides that goods are merchantable when they are fit for ordinary purposes. As a food defendant's mixed nuts are subject to various state and federal regulatory acts dealing with the quality of food goods. G.S. 106-129 dealing with adulterated foods is instructive.

" . . . A food shall be deemed to be adulterated:

(1) a. If it bears or contains any poisonous or deleterious substance which may render it injurious to health; *but in case the substance is not an added substance* such food shall not be considered adulterated under this para-

graph if the quantity of such substance in such food does not ordinarily render it injurious to health; . . . . " (Emphasis added.)

This language is amplified in regulations promulgated under the Federal Food Drug and Costmetic Act 21 U.S.C. § 342 et seq. (1970). *See, e.g.,* 21 C.F.R. § 122.1(b) (1975). These regulations have been adopted by the State Board of Agriculture pursuant to G.S. 106-128 and are currently in effect in North Carolina. *See* 2 N.C.A.C. 9B.0008 (1976).

[5]   Thus, it appears by statute and regulation that a certain limited amount of naturally occurring unshelled filberts is permissible without rendering the food goods adulterated. As such they are fit for ordinary purposes and merchantable under G.S. 25-2-314(2)(c).

[6]   Plaintiff can find no comfort in the foreign substance doctrine as the unshelled filbert was not a foreign substance. It is well recognized in this and other jurisdictions passing on the question that the presence of natural impurities is no basis for liability. *Adams v. Great Atl. & Pac. Tea Co.,* 251 N.C. 565, 112 S.E. 2d 92 (1960); *Webster v. Blue Ship Tea Room, Inc.,* 347 Mass. 421, 198 N.E. 2d 309 (1964).

In *Adams,* the plaintiff alleged that he broke a tooth while eating cornflakes when he bit down on a part of a grain of corn which had crystalized into a state as hard as quartz. Plaintiff sued on the theory of implied warranty and the trial court entered judgment of involuntary nonsuit. The Supreme Court affirmed the judgment on the ground that the crystalized grain of corn was not a foreign substance but was a natural part of the original food not removed in processing, and its presence should have been anticipated by the consumer.

Recovery was denied in numerous cases from other jurisdictions where the impurity was a natural incident of the food. *See: Allen v. Grafton,* 170 Ohio St. 249, 10 Ohio Ops. 2d 289, 164 N.E. 2d 167 (1960) (oyster shell in oyster stew); *Shapiro v. Hotel Statler Corp.,* 132 F. Supp. 891 (S.D. Cal. 1955) (fish bone in fish stew); *Lamb v. Hill,* 112 Cal. App. 2d 41, 245 P. 2d 316 (1952) (chicken bone in chicken pie); *Silva v. F. W. Woolworth Co.,* 28 Cal. App. 2d 649, 83 P. 2d 76 (1938) (fragment of turkey bone in roast turkey).

Since the impurity complained of in this case was a natural incident of the goods in question, we feel that there was no breach of the implied warranty of merchantability.

### STRICT LIABILITY IN TORT

Plaintiff contends this appeal should be governed by the rule of strict liability in tort. While there appears some support for his position in some of our cases, we decline to adopt strict liability as a premise for disposition of this case. *Terry v. Double Cola Bottling Co., supra.*

[7] Assuming, *arguendo*, the viability of strict liability in tort in North Carolina, it is clear that plaintiff has failed to bring defendant within the ambit of the rule. In order for strict liability to obtain, the product must be not only defective but present an unreasonable danger to health. *Kassab v. Central Soya,* 432 Pa. 217, 246 A. 2d 848 (1968) ; *Greenman v. Yuba Power Products, Inc.,* 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P. 2d 897 (1963). Strict liability is a substantially more narrow basis of liability than breach of implied warranty of merchantability under G.S. 25-2-314(1). J. White and R. Summers, Uniform Commercial Code § 9-7 (1972). It appears clear that certain commodities such as food and drugs cannot be manufactured without some element of risk due to their very nature. *See* Restatement (Second) of Torts § 402A, comment i, k (1965).

[8] Thus, the facts of plaintiff's case do not appear consistent with a strict liability theory. The product in question was not defective, nor did it present an unreasonable danger to health and safety.

### CONCLUSION

So long as defendant's goods are merchantable there is no breach of implied warranty. Absent evidence of negligence and express warranty, and given the present posture of strict liability in this jurisdiction, we discern no basis for liability.

For the reasons stated, the judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge MORRIS concur.