REBECCA B. RENFRO d/b/a RENFRO BROKERAGE v. FRANK B. MEACHAM

No. 808SC522

(Filed 3 February 1981)

**Brokers and Factors § 6— real estate broker's action to recover commission — no triable issue of fact**

In an action by a licensed real estate broker to recover a commission for having procured a prospective purchaser for property owned by defendant in accordance with the terms of a listing agreement between the parties, the trial court properly granted summary judgment for defendant since there was no triable issue of fact as to whether the parties had differing intentions with respect to the property being sold as a unit or in separate parts, nor was there a genuine issue of material fact as to whether defendant failed to cooperate with plaintiff in the selling of the property as required under the listing agreement; furthermore, defendant's refusal to accept either a written or an oral offer tendered on behalf of a prospective purchaser was justified under the circumstances since the terms of the offers differed substantially from the terms of sale in the listing agreement, and the prospective purchaser was therefore not "ready, willing, and able" to purchase on defendant's terms as set out in the listing agreement.

APPEAL by plaintiff from *Brown, Judge.* Judgment entered 17 December 1979 in Superior Court, WAYNE County. Heard in the Court of Appeals 4 December 1980.

This is a civil action in which plaintiff, a licensed real estate broker, seeks to recover a commission for having procured a prospective purchaser for property owned by defendant in accordance with the terms of a listing agreement between plaintiff and defendant. In a complaint filed 12 October 1978, plaintiff, among other things, alleged the following: On or about 20 May 1978, plaintiff and defendant entered into a written agreement, which replaced a similar agreement between the parties dated 23 February 1978, wherein defendant authorized plaintiff to act as his agent in obtaining prospective purchasers for a certain tract of land owned by defendant; pursuant to such authority, plaintiff furnished to defendant several offers to purchase from qualified prospective purchasers solicited by plaintiff; defendant "refused to sell, convey or agree to sell or convey the property listed by the defendant with the plaintiff;" defendant refused to accept any of the offers to purchase tendered by prospective purchasers solicited by plaintiff; plaintiff is therefore entitled to the commission as set forth in the terms of the agreements; and plaintiff has made demand for payment of the commission, but defendant has refused such demand. Plaintiff attached to his complaint two exhibits which he alleged to be copies of the 23 February 1978 and 20 May 1978 agreements.

Defendant filed answer on 20 January 1979, alleging that the complaint failed to state a claim upon which relief could be granted. Defendant admitted that he "signed and delivered" the exhibits purported by plaintiff to be copies of the alleged agreement between the parties; that he has refused to sell or convey the property; and that plaintiff has made demand, which defendant refused, for payment of the commission. Defendant, however, denied the other material allegations of the complaint, and further alleged, among other defenses, the following: Even if there was a valid listing agreement, plaintiff failed to communicate or deliver any offers that would be acceptable under the terms of the agreement; the consummation of a sale is a condition precedent to the payment of any commission, and no sale was consummated; and the writing was not as represented by plaintiff when defendant signed it.

Defendant moved for summary judgment on 2 October 1979. In support of his motion, defendant offered his pleadings, deposi-

tions of defendant and Rufus R. Kimrey, and the following stipula-
tions between the parties: (1) on 20 May 1978, plaintiff and defend-
ant entered into a "Listing Agreement" under which defendant
authorized plaintiff "on the terms and conditions therein stated" to
act as defendant's agent in "soliciting and obtaining prospective
purchasers for a tract of land owned by defendant;" (2) this agree-
ment "constitutes the only agreement between the parties and was
in full force and effect during the period therein stated;" (3) this
agreement contains, among other things, the following terms:

> 3. Sale price. $1,250,000 for entire property or 550
> Acres of open land at $687,500 or equivalent price per
> acre and 1088 Acres of woodsland at $562,500 or equiva-
> lent price per acre.

> 4. Terms of Sale. Terms of sale of entire property at
> $1,250,000 to be one-half cash at closing, one-half balance
> in six months, indebtedness to be secured by Deed of Trust
> or Certif. of Deposit in favor of Seller. Terms for sale of
> open land to be the same. Terms for the sale of woodsland
> to be cash at closing.

> 5. Cooperation with Agent. Seller agrees to cooperate
> with you to facilitate the sale of the property. Property
> may be shown by appointment made by or through you as
> Listing Agent.

> 6. Commission. Seller agrees to pay you a commission if
> a purchaser is procured by you, your agency during the
> listing period. Commission shall be computed on the
> gross sales price of the property. Commission to be 3%
> (Three Percent);

(4) during the period of this agreement, plaintiff obtained and
communicated one written offer for purchase of the subject prop-
erty, which offer was rejected by defendant; (5) this written offer,
from Canal Industries, Inc., in pertinent part provides:

> The terms and conditions of the sale and purchase are as
> follows: The agreed price for said 1638 acres is to be
> $1,250,000.00 or equivalent price per acre based on sur-
> vey to be run at Buyer's expense. The purchase price to be
> paid as follows: One-half of the purchase price to be paid
> upon the deliverance of a fee simple deed free from all

encumbrances for said property. The remaining indebtedness to be paid six months from date of deliverance of deed. Indebtedness to be secured by Deed of Trust during period of said indebtedness.

. . .

2. Seller and Buyer agree that pro-ration of taxes will be based on closing date.

3. Seller and Buyer shall be responsible for their own attorney's fees and the Seller will pay Revenue stamps.

. . .

5. It is understood that all earnest money deposits will be held in escrow by the Seller's agent until closing date and;

(5-A) Earnest money to be refunded to Buyer; if offer is rejected by Seller, if title cannot be delivered or in the event Buyer withdraws offer before the Seller's acceptance.

(5-B) The Buyer acknowledges that failure to carry out agreement after Seller's acceptance will forfeit deposit as liquidated damages which are to be paid to the Owner-Seller subject to deductions of the agents [sic] commission;

. . .

(6) during the period of this agreement, plaintiff obtained and communicated one oral offer for purchase of the subject property, which offer was refused by defendant; (7) this oral offer, also from Canal Industries, Inc., provided that Canal would buy the subject property in its entirety for the listed price, subject to the condition that defendant agree to grant Canal

an option for a stated time of six (6) to nine (9) months for a sum to be agreed upon with the offeror to have the right to survey the premises and elect at the end of the stated time to exercise its option to purchase or to forfeit to the defendant the option price;

and (8) no sale of the subject property was consummated during the

period of the listing agreement.

Plaintiff offered the stipulations, the deposition of Kimrey, and her own deposition in opposition to defendant's motion. From an order granting summary judgment in favor of defendant, plaintiff appealed.

*Taylor, Warren, Kerr & Walker, by Robert D. Walker, Jr., for the plaintiff appellant.*

*Biggs, Meadows, Batts, Etheridge & Winberry, by William D. Etheridge, for the defendant appellee.*

HEDRICK, Judge.

The sole question presented by this appeal is whether the court erred in granting summary judgment for defendant. G.S. § 1A-1, Rule 56(c) in pertinent part provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Upon a motion for summary judgment, the burden is on the moving party to establish the lack of a triable issue of fact. *Kidd v. Early,* 289 N.C. 343, 222 S.E.2d 392 (1976); *Baumann v. Smith,* 41 N.C. App. 223, 254 S.E.2d 627 (1979). The motion must be considered in a light most favorable to the party opposing summary judgment, *Baumann v. Smith, supra; Peterson v. Winn-Dixie of Raleigh, Inc.,* 14 N.C. App. 29, 187 S.E.2d 487 (1972), and the papers of the moving party will be carefully scrutinized. *Kidd v. Early, supra; Baumann v. Smith, supra.*

In contending that genuine issues of material fact do exist in the present case, plaintiff first argues that "a material issue of fact obviously exists as to the intent of the defendant in the wording of the listing agreement of May 20, 1978." Plaintiff points out that her deposition indicates that defendant instructed her as to how many acres of woodland and how many acres of cultivated land existed on the subject property, and that defendant not only specified a total price for the property but that he also specified a separate price, or equivalent price per acre, for the "open" or cultivated portion, with

the remaining part of the total purchase price allotted to the "woods-land" acreage. In contrast, the testimony at defendant's deposition indicates that the 20 May 1978 agreement did not conform to his understanding and that the property was not to be sold other than as a complete unit, thus raising an issue of fact as to how the parties intended the property to be sold. We do not agree. Where the language of a contract is clear and unambiguous, the court is obligated to interpret the contract as written, and the court cannot look beyond the terms to see what the intentions of the parties might have been in making the agreement. *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E.2d 829 (1968).

In the present case, the listing agreement clearly and unmistakably indicates that the sales price was to be $1,250,000 for the entire property, or $687,500 (or an equivalent price per acre) for the "open" portion (550 acres) and $562,500 (or an equivalent price per acre) for the "woodsland" portion (1,088 acres). The court cannot therefore look beyond the agreement to see if the parties had differing intentions as to whether the property was to be sold as a unit or in separate parts; the language of the listing agreement obviously indicates that the property could be sold either way. Thus, no issue of fact could possibly arise as to those intentions.

Plaintiff's next argument follows from the first. She contends that based upon the "conflicting statements" of the parties as to whether the property could only be sold as a unit, a factual issue arises as to whether plaintiff was empowered to obtain a purchaser for either the total sales price or for a sales price based upon the amount of "open" or "woodsland" acreage. Since we have determined that the listing agreement is unambiguous and controlling with respect to whether the property could be sold as one unit or in parts, this argument deserves no further attention.

Plaintiff lastly contends a genuine issue of material fact exists as to whether defendant failed to cooperate with plaintiff in the selling of the property as required under paragraph five of the listing agreement. Plaintiff argues in support of this contention that defendant never gave any reasons for his refusal to accept the offers from Canal Industries, Inc. and that she "had a great deal of difficulty in obtaining the cooperation of the defendant in that she was never able to contact him or find him." In our view, however, an issue of fact has not been raised. Plaintiff's complaint made no allegation that defendant "failed to cooperate." The record contains no evidence that defendant made himself unavailable to plaintiff,

restricted access to the property to prevent plaintiff from showing it, or in any other way hindered plaintiff from performing the duties as set forth in the agreement.

Furthermore, defendant's refusal to accept either the written offer or the oral offer tendered on behalf of Canal Industries, Inc. was justified under the circumstances. While it is true, as plaintiff argues, that a broker is entitled to a commission if he obtains during the period of the agency a prospect ready, willing, and able to purchase the premises on the terms specified by the owner, *Thompson-McLean, Inc. v. Campbell*, 261 N.C. 310, 134 S.E.2d 671 (1964), even if the owner voluntarily fails to comply with his agreement to sell, *Bonn v. Summers*, 249 N.C. 357, 106 S.E.2d 470 (1959), the circumstances of this case clearly indicate that Canal Industries, Inc. was not "ready, willing, and able" to purchase on defendant's terms as set out in the listing agreement. The terms of both the written offer and the oral offer substantially differed from the terms of sale in the listing agreement.

The written offer provided that the sales price for the entire tract of 1638 acres would be "$1,250,000 or equivalent price per acre based on survey to be run at buyer's expense," while the listing agreement made no provision for an alteration in the sales price of the entire tract if a survey should determine the actual acreage to be different. The written offer also varies from the terms of the listing agreement with respect to the method of payment. Under the written offer, if Canal proceeded under the "equivalent price per acre" clause, it would have to pay one-half of the purchase price at closing, and one-half of the purchase price six months thereafter, regardless of whether the acreage was "open" or "woodsland." Proceeding with a "price per acre" transaction under the listing agreement, however, would dictate a *different* method of payment, i.e., the entire purchase price in cash to be paid at closing, for all "woodsland" acreage. The written offer further was at variance with the listing agreement since the written offer had several provisions that were not mentioned in the listing agreement, e.g., a provision for proration of taxes between Canal and defendant, and a provision that the offeror's [Canal] earnest money deposit would be forfeited to defendant as liquidated damages if the offeror defaulted, subject to a deduction for plaintiff's commission.

The oral offer also varied substantially from the listing agreement. This offer was subject to the condition that defendant grant to

Canal an option, for a term of six to nine months for a sum to be agreed upon between Canal and defendant, to have the right to survey the premises and elect at the end of the stated time to exercise its option to purchase or to forfeit the option price to defendant. This is, in essence, a counteroffer; nothing in the listing agreement contemplated giving an option to a prospective purchaser, and the listing agreement indicates in paragraph nine defendant's intention to part with the property as soon as he could find a complying buyer: "Seller agrees to give purchaser possession of the property immediately upon closing subject only to existing acricultural [sic] tenancy which expires December 31, 1978." Since this record therefore contains no issue of fact as to whether defendant "failed to cooperate," plaintiff's argument must fail.

After careful examination, we can find no genuine issue of material fact in this record. We note that the listing agreement was prepared on plaintiff's form and it clearly indicates that a commission would be paid by the seller if a *purchaser* were procured. No purchase of defendant's property, however, has taken place. We conclude defendant carried his burden of establishing the lack of a triable issue of fact, and summary judgment for defendant is

Affirmed.

Judges CLARK and WHICHARD concur.