FRED GOODMAN v. WENCO MANAGEMENT, WENDY'S FOODS, INC., D/B/A WENDY'S OLD FASHIONED HAMBURGERS AND GREENSBORO MEAT SUPPLY COMPANY, INC.

No. 8915SC1279

(Filed 21 August 1990)

**1. Food § 1 (NCI3d); Sales § 6.1 (NCI3d)— hamburger—bone— implied warranty of merchantability**

     Taking into consideration the concurring and dissenting opinions, directed verdict should not have been granted for defendant Wendy's on a claim for breach of implied warranty of merchantability arising from a bone in a hamburger where Wendy's was a merchant within the terms of N.C.G.S. § 25-2-104(1); the sale of the hamburger to plaintiff was a sale of goods within the meaning of N.C.G.S. § 25-2-105(1); none of the exclusions or modifications of N.C.G.S. § 25-2-316 are applicable, so that there was a breach of an implied warranty

of merchantability if the hamburger was not fit for the ordinary purposes for which it was sold; the evidence was not so unequivocal that a court could state as a matter of law that it came from meat in the hamburger; under the principles of *Adams v. Great Atlantic & Pacific Tea Company*, 251 N.C. 565, it could not be said as a matter of law that a bone of the size allegedly found by plaintiff is natural to ground beef; if natural, it clearly remains a jury question as to whether a consumer could reasonably anticipate finding a piece of bone of that size in ground beef; and the fact that the ground beef may have complied with all state and federal regulations is only some evidence which the jury may consider in determining if the product was merchantable.

**Am Jur 2d, Food §§ 84, 89, 91, 94; Sales §§ 749, 751, 755, 777.**

2. **Food § 1.1 (NCI3d) — hamburger — bone — negligence**

Taking into consideration the concurring and dissenting opinions, directed verdict was properly granted for defendant Wendy's on a negligence claim arising from a piece of bone in a hamburger.

**Am Jur 2d, Food §§ 84, 89, 91, 94; Sales §§ 749, 751, 755, 777.**

3. **Food § 1 (NCI3d) — hamburger — bone — implied warranty of merchantability**

Taking into consideration the concurring and dissenting opinions, the trial court erred by granting summary judgment for Greensboro Meat Supply Co., Inc. (GBMS) on a claim for breach of implied warranty of merchantability arising from a bone in a hamburger where there was a genuine issue as to whether the bone was in the ground beef and, if so, whether GBMS's production of this meat constituted a breach of the implied warranty of merchantability.

**Am Jur 2d, Food §§ 84, 89, 91, 94; Sales §§ 749, 751, 755, 777.**

4. **Food § 1.1 (NCI3d) — hamburger — bone — negligence**

Taking into consideration the concurring and dissenting opinions, the trial court did not err by granting summary

judgment for Greensboro Meat Supply Co., Inc. (GBMS) on a negligence claim arising from a bone in a Wendy's hamburger.

**Am Jur 2d, Food §§ 84, 89, 91, 94; Sales §§ 749, 751, 755, 777.**

Judge ARNOLD concurring in part and dissenting in part.

Chief Judge HEDRICK dissenting.

APPEAL by plaintiff from order entered 21 December 1987 by *Judge Anthony M. Brannon* in ORANGE County Superior Court and judgment entered 24 May 1989 by *Judge B. Craig Ellis* in ORANGE County Superior Court. Heard in the Court of Appeals 4 June 1990.

*Brenton D. Adams for plaintiff-appellant.*

*Faison & Brown, by O. William Faison and Reginald B. Gillespie, Jr., for defendant-appellee Wenco Foods, Inc.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Sanford W. Thompson, IV and Kari Lynn Russwurm, for defendant-appellee Greensboro Meat Supply Company.*

GREENE, Judge.

Plaintiff appeals the trial court's grant of summary judgment for Greensboro Meat Supply Company, Inc. (GBMS) and its directed verdict at the end of plaintiff's evidence for Wenco Management, Wenco's Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers (Wendy's).

In his complaint, the plaintiff alleged that Wendy's was negligent and breached its implied warranty of merchantability by preparing and serving a hamburger sandwich containing bone. Plaintiff also alleged that GBMS was negligent and breached its implied warranty of merchantability by processing and providing to Wendy's ground beef used in the sandwich.

At trial, plaintiff's evidence tended to show that on 28 October 1983, he purchased a double hamburger sandwich with "everything" on it. In addition to the bun and burger, his testimony mentions lettuce, tomato, ketchup and other unspecified "toppings" or "condiments." About halfway through the sandwich, he bit a hard substance. He spit out a chewed mass of burger, bun and condiments and found a piece of bone therein. Because the "majority of that mass was meat," the plaintiff concluded the bone had been

in the meat. However, he admitted that the bone could possibly have been in the bun, toppings or condiments. He stated he could not be "sure" what portion of the sandwich concealed the bone.

The plaintiff stated the bone was "possibly the size of my small fingernail," but more triangular with a slant off to one side. He took the bone home, measured it and found it between one-sixteenth and one-eighth inch thick. "It was thick on one side and shaved down on the other." Its length was about one and one-half inches, and the width was one-quarter inch at its widest, from which it narrowed to a point. Plaintiff later lost the bone.

As a result of biting the bone, the plaintiff broke two teeth, and damaged a third which later was extracted. He incurred substantial dental expenses for root canal surgery, temporary and permanent crowns, and tooth extraction.

In support of its motion for summary judgment, GBMS offered the pleadings and the plaintiff's deposition, which contained essentially the evidence plaintiff offered at trial and described above.

In granting Wendy's motion for directed verdict, the trial judge entered a written judgment which provided in pertinent part:

> The Court first considered the negligence issue. It appears to the Court upon a careful review of the law that the doctrine of *res ipsa loquitur* does not apply. The Plaintiff's evidence, taken in the light most favorable to him, shows that the ground beef obtained by the Defendant was purchased from a processing plant which was approved by the U.S. Department of Agriculture and had meat inspectors on site. The Defendant's standards for ground beef exceeded those of the U.S. Department of Agriculture, and the Defendant's inspection procedure was effective quality control and more than met the duty of care owed by the Defendant to the Plaintiff. The Plaintiff offered no evidence from which reasonable minds could conclude that the Defendant had failed to meet any duty of care owed to the Plaintiff, and the Court directs verdict in favor of the Defendant on the issue of negligence.

> The Court next considered the issue of implied warranty of fitness for purpose and, based upon the case law and the facts in the instant case, concludes that the bone in the hamburger patty was a natural part of the ground beef and not a substance warranted against by an implied warranty of mer-

chantability. The Court hereby directs verdict in favor of the Defendant on this issue as well.

The issues presented are: (I) in an action against Wendy's, whether a piece of bone in a hamburger sandwich is sufficient evidence to overcome a motion for directed verdict (A) in an action for breach of implied warranty of merchantability and (B) in an action for negligent preparation of the hamburger. sandwich; and (II) in an action against GBMS, whether a piece of bone found in a hamburger sandwich, prepared with hamburger supplied by GBMS, is sufficient to overcome a motion for summary judgment for GBMS (A) in an action for breach of implied warranty of merchantability and (B) in an action for negligent processing of the ground beef.

## I

### Wendy's

On appeal from the granting of a motion for directed verdict, the evidence supporting plaintiff's claim is taken as true and considered in the light most favorable to him, granting him the benefit of every reasonable inference supporting his claim. *Adler v. Lumber Mut. Fire Ins. Co.*, 10 N.C. App. 720, 179 S.E.2d 786, *aff'd*, 280 N.C. 146, 185 S.E.2d 144 (1971). If the evidence considered in this manner is sufficient to justify a verdict for the plaintiff, the motion must be denied. *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979).

## A

### Implied Warranty of Merchantability

[1]   The Uniform Commercial Code provides:

> Unless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

N.C.G.S. § 25-2-314(1) (1986). A merchant is defined as:

> . . . a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or

GOODMAN v. WENCO MANAGEMENT

[100 N.C. App. 108 (1990)]

skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

N.C.G.S. § 25-2-104(1) (1986). Goods are defined as:

. . . all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action. . . .

N.C.G.S. § 25-2-105(1) (1986).

To be merchantable, goods "must be at least such as . . . are fit for the ordinary purposes for which such goods are used . . . ." N.C.G.S. § 25-2-314(2)(c) (1986).

Wendy's was a merchant within the terms of the statute, and the sale of the hamburger to the plaintiff was a sale of "goods" within the meaning of the statute. None of the exclusions or modifications of § 25-2-316 are applicable. Therefore, there exists a breach of an implied warranty of merchantability if the hamburger was not fit for the ordinary purposes for which it was sold. Generally, a restaurant "makes an implied warranty that the food which it serves is fit for human consumption, even though the restaurant in the exercise of all possible care could not have discovered its unwholesome nature." R. Anderson, *Uniform Commercial Code* § 2-314.183 (1983).

When a plaintiff has been injured by a substance in food or drink, the courts have used various tests to determine whether that food was fit for ordinary purposes for which it was sold. Some courts apply a "foreign/natural" test which generally holds that:

when the plaintiff is injured by a substance in food or drink there is no warranty liability if the substance was one that was natural to the food, as cherry pits in cherries, crabshell in crab meat, or fish bones in fish. Conversely, warranty liabilities imposed upon the merchant seller of food if the substance in the food that causes the harm of the plaintiff was a substance that was foreign to the food, such as a nail, a piece of glass, or a piece of wire.

Anderson, § 2-314.184. Other courts apply a "reasonable expectation" test which generally provides that:

> When the plaintiff is injured by a substance in food . . . courts ignore whether the substance was natural or foreign to the food and direct inquiry to whether it was reasonable to expect the presence of the substance in the food. If it was not reasonable to expect the presence of the harm-causing substance, warranty liability can be imposed. In contrast, if it was reasonable to expect the substance in the food, the plaintiff is barred from exposing himself to the expectable risk. In effect, this view regards anything that was not expectable as "foreign;" and changes the frame of reference so that "foreign to expectations" takes the place of "foreign to food."

Anderson, § 2-314.185.

In North Carolina, in a pre-Uniform Commercial Code case, the Court was faced with an alleged breach of an implied warranty when the plaintiff sued for damages to his tooth which he received when he bit a partially crystallized kernel of corn while eating corn flakes. *Adams v. Great Atlantic & Pacific Tea Co.*, 251 N.C. 565, 112 S.E.2d 92 (1960). In affirming a directed verdict for the defendant grocery store, the *Adams* Court concluded:

> The instant case is one *where* the substance causing the injury is natural to the corn flakes, and not a foreign substance, *and where* a consumer of the product might be expected to anticipate the presence of this substance in the food.

251 N.C. at 572, 112 S.E.2d at 98 (emphases added).

We do not read *Adams*, as defendants suggest, as adopting a true "foreign/natural" test. Our reading of *Adams* is that the Court established a two-part inquiry: (1) whether the substance causing the injury is natural or foreign; and (2) if natural, whether "a consumer of the product might be expected to anticipate the presence of this substance in the food." Therefore, a plaintiff could recover under *Adams* for breach of implied warranty if either he could show that the substance was foreign or if he could show it was a natural substance but one that a consumer might not expect or anticipate. Accordingly, the *Adams* test leads to approximately the same result as the 'reasonable expectation' test; it simply does so by somewhat circuitous analysis.

**GOODMAN v. WENCO MANAGEMENT**

[100 N.C. App. 108 (1990)]

In an opinion consistent with *Adams*, this court held that the *quantity* of "naturally occurring unshelled filberts" was the determinative factor in whether the filberts were merchantable within the meaning of § 25-2-314(2)(c). *Coffer v. Standard Brands*, 30 N.C. App. 134, 141, 226 S.E.2d 534, 538 (1976).

Applying the *Adams* principles to the facts of this case in determining whether the hamburger was fit for the ordinary purposes for which it was sold, we determine the trial court erred in granting the directed verdict. First, the evidence of the source of the bone is not so unequivocal that a court could state, as a matter of law, that it came from the meat in the hamburger sandwich. Plaintiff stated that he believed the bone came from the beef portion of his hamburger because the mass of chewed sandwich he spit out was mainly beef. However, he also stated the bone could have come from the bun, the condiments or the toppings. He stated he could not be "sure" of its actual source. From this evidence the jury could conclude that the bone came from the beef portion of the hamburger sandwich, but it certainly is not barred from concluding that it came from some other portion or that it is impossible to tell in which portion of the sandwich the bone was concealed.

Second, even if a jury were to determine that the bone came from the beef portion of the sandwich, the *Adams* test would not support directed verdict for defendant. It must first be determined whether a bone the size of the one plaintiff allegedly found is natural or foreign to ground beef. While a steak bone is natural as a matter of law to a T-bone steak and a fish bone natural as a matter of law to whole fish, we are not prepared to say as a matter of law that a bone of the size allegedly discovered by the plaintiff is natural to ground beef. Furthermore, even if natural, it clearly remains a jury question as to whether a consumer could reasonably anticipate finding a piece of bone of the size in question in ground beef.

We also reject Wendy's argument that since the hamburger in question complied with all state and federal regulations for ground beef that the meat was merchantable as a matter of law. The fact that the ground beef may have complied with all state and federal regulations is only some evidence which the jury may consider in determining if the product was merchantable. *Cf. Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 68-69, 376 S.E.2d

425, 428 (1989) (compliance with state building code is evidence of due care but is not conclusive). In any event, as we have noted, since we cannot say that the bone came from the beef, proof that the hamburger meat itself complied with all state and federal regulations could not support entry of directed verdict for defendant Wendy's.

B

Negligence

[2] N.C.G.S. § 106-129 provides in pertinent part:

A food shall be deemed to be adulterated:

(1) a. If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this paragraph if the quantity of such substance in such food does not ordinarily render it injurious to health;

N.C.G.S. § 106-129(1)(a) (1988). It is a misdemeanor offense to sell any adulterated food. N.C.G.S. §§ 106-122 and 106-124 (1988).

Were a jury to determine that a bone of the size described by the plaintiff was of a quantity (or size) which ordinarily renders a hamburger sandwich injurious to health, then a violation of § 106-29 is proven and a *prima facie* case of negligence established if a jury determines the violation was a proximate cause of the injury. *See Lutz Ind. v. Dixie Home Stores*, 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955) (violation of ordinance constitutes negligence per se when ordinance imposes a specific duty for the protection of others and breach of such duty is proximate cause of injury).

II

GBMS

[3] Summary judgment is an extraordinary remedy, and it is warranted only when there is no dispute as to material facts and the moving party deserves judgment as a matter of law. *Gore v. Hill*, 52 N.C. App. 620, 279 S.E.2d 102, *cert. denied*, 303 N.C. 710 (1981). In ruling on a summary judgment motion, the trial court must view the record in the light most favorable to the party opposing the motion. *Peterson v. Winn-Dixie of Raleigh, Inc.*, 14 N.C. App. 29, 187 S.E.2d 487 (1972). To be entitled to

GOODMAN v. WENCO MANAGEMENT

[100 N.C. App. 108 (1990)]

summary judgment, the movant must conclusively establish "a complete defense or legal bar to the nonmovant's claim." *Virginia Electric & Power Co. v. Tillett,* 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied,* 317 N.C. 715, 347 S.E.2d 457 (1986). "The burden rests on the movant to make a conclusive showing; until then, the nonmovant has no burden to produce evidence." *Id.*

A

Warranty of Merchantability

The plaintiff averred that he injured himself biting a bone while eating a hamburger sandwich sold by Wendy's, and that GBMS supplied Wendy's with beef with which Wendy's made the hamburger patties. The only evidence defendant produced at summary judgment related to the fact that the plaintiff believed the bone came from the beef patty. According to GBMS, this sets up the 'foreign/natural' standard as a bar to plaintiff's recovery.

Application of the *Adams* test would not, for the reasons heretofore asserted, bar plaintiff's recovery against GBMS because the appropriate inquiry would be whether a bone of the size described by the plaintiff was natural to ground beef, and if so, whether it was what a consumer could reasonably expect to find in ground beef.

Since a genuine issue exists as to whether the bone was in the ground beef, and if so, whether GBMS's production of this meat for Wendy's constituted a breach of GBMS's implied warranty of merchantability, we reverse the trial court's grant of summary judgment for GBMS on this issue.

B

Negligence

[4] The plaintiff averred that the defendant was negligent in producing or processing the ground beef, that GBMS sold the ground beef to Wendy's, and that GBMS's negligence in preparing the ground beef was a proximate cause of plaintiff's injury. At the time the trial court granted summary judgment, GBMS had presented no evidence conclusively establishing that the plaintiff could not succeed in its claim. The evidence produced by the defendant related only to the *Adams* test. Therefore, we must reverse the trial court's grant of summary judgment on this issue also.

GOODMAN v. WENCO MANAGEMENT

[100 N.C. App. 108 (1990)]

Reversed and remanded.

Judge ARNOLD concurs in part and dissents in part.

Chief Judge HEDRICK dissents.

Judge ARNOLD concurring in part and dissenting in part.

I vote to affirm summary judgments and directed verdicts relating to all claims based on negligence. However, I believe the claims for implied warranty of merchantability should go to the jury. Therefore, I vote to reverse and remand the implied warranty claims brought by plaintiff.

Chief Judge HEDRICK dissenting.

In my opinion, the forecast of evidence in this case is not sufficient to withstand the motion for summary judgment of defendant, Greensboro Meat Supply Company, Inc., with respect to plaintiff's claim for negligence or breach of the implied warranty of merchantability. Likewise, in my opinion, the evidence offered at trial is not sufficient to take the case to the jury against defendants Wenco Management, Wendy's Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers (Wendy's) with respect to either negligence or breach of the implied warranty of merchantability.

I vote to affirm the summary judgment for defendant Greensboro Meat Supply Company, Inc., and the judgment directing a verdict for defendants Wenco Management, Wendy's Foods, Inc., d/b/a Wendy's Old Fashioned Hamburgers (Wendy's).