MARY NELL HYLTON, Administratrix of the Estate of William McKinley Hylton, Deceased, Plaintiff v. THOMAS J. KOONTZ, M.D., SALEM SURGICAL ASSOCIATES, P.A., BENZION SCHKOLNE, M.D., PIEDMONT ANESTHESIA AND PAIN CONSULTANTS, P.A., AND MEDICAL PARK HOSPITAL, INC., Defendants

No. COA99-1053

(Filed 5 July 2000)

## 1. Evidence— affidavits—summary judgment—not based on personal knowledge

Affidavits were not admissible as evidence at a summary judgment hearing in a medical malpractice action where the assertions in the affidavits (with one exception) did not reveal that they were based on the witness's personal knowledge. Affidavits supporting a motion for summary judgment must be made on personal knowledge and affirmations based on personal awareness, information and belief, and what the affiant thinks do not comply with the personal knowledge requirement. N.C.G.S. § 1A-1, Rule 56(e).

## 2. Hospitals and Other Medical Facilities— medical malpractice—agency of anesthesiologist

Summary judgment was properly granted for defendant hospital in a medical malpractice action where the hospital presented evidence of the agreement between it and the medical practice to which defendant anesthesiologist belonged which satisfied the hospital's initial burden of showing that it had no right to control the manner or method of the doctor's work at the hospital. The burden shifted to plaintiff to present evidence showing a genuine issue of fact on the agency question; while plaintiff presented hospital policies, the duties outlined therein were general in nature and do not reveal any control by the hospital over the manner and method of how the doctor performed his duties.

## 3. Hospitals and Other Medical Facilities— medical malpractice—agency of doctor—summary judgment

Summary judgment for a hospital in a medical malpractice action based on Dr. Koontz's alleged negligence was reversed where the hospital presented no competent evidence of the nature of its relationship with Dr. Koontz.

Appeal by plaintiff from order filed 24 June 1999 by Judge W. Douglas Albright in Forsyth County Superior Court. Heard in the Court of Appeals 16 May 2000.

*Young, Haskins, Mann, Gregory & Smith, P.C., by Fred D. Smith, Jr., for plaintiff-appellant.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Tamura D. Coffey, for defendant-appellees.*

GREENE, Judge.

Mary Nell Hylton (Plaintiff), Administratrix of the Estate of William McKinley Hylton (Decedent), appeals from the trial court's order granting Medical Park Hospital, Inc.'s (the Hospital) motion for summary judgment.

The record and the pleadings reveal Decedent underwent surgery for the removal of his gall bladder at the Hospital. Thomas J. Koontz, M.D. (Dr. Koontz), a surgeon, performed the operation, and Benzion Schkolne, M.D. (Dr. Schkolne) was the anesthesiologist. Surgery commenced at 8:50 a.m., and at 3:25 p.m. that same day, the Decedent died while still in the Hospital. Plaintiff's complaint alleged vicarious liability against the Hospital for the alleged medical negligence of Dr. Koontz and Dr. Schkolne.

Prior to trial, the Hospital moved for summary judgment. In support of its motion, the Hospital presented two affidavits, over Plaintiff's objection, of its Senior Vice President for medical staff affairs James W. Lederer, M.D. (Dr. Lederer). One of the affidavits included an attachment of the Hospital's contract with Dr. Schkolne's medical practice group Forsyth Anesthesiology Associates, P.A. (FAA) (the Agreement). The Agreement provides in pertinent part:

4. <u>Duties of FAA</u>: During the term of this Agreement, FAA shall have the exclusive responsibility and right to provide professional anesthesia services to all patients at the Hospital. FAA agrees to provide services including but not restricted to the following:

. . . .

(f) FAA will appoint at least one physician at any given time, by rotation or fixed term, who shall be directly responsible as medical director for the areas of Recovery Room,

Outpatient Services, Respiratory Therapy and Special Care Unit.

. . . .

. . . .

8. Legal Status: . . . FAA and the Anesthesiologists provided by FAA, in performance of the work, duties and obligations under this Agreement, are at all time acting and performing as independent contractors practicing the specialty of anesthesia. The Hospital shall neither have nor exercise any control or direction over the method and means by which the Anesthesiologists and FAA shall perform their work and functions . . . . Nothing in this Agreement shall be construed to limit the Anesthesiologists from practicing their specialty outside of the Hospital as long as this practice does not infringe on their ability to perform their duties under this Agreement. . . .

. . . .

9. Charges: FAA will be compensated for its delivery of anesthesia services to patients by directly billing the patients and/or their insurers for services rendered by FAA. . . . FAA will receive no compensation for any other duties required of it hereunder. . . .

10. Billing: FAA will bill and collect charges for services provided to patients pursuant to this Agreement at its own cost and expense. . . . The Hospital and FAA shall independently bill and collect from the patient and third-party reimbursement agencies . . . .

In addition to presenting the Agreement, Dr. Lederer affirmed he had, in his capacity as Senior Vice President for medical staff affairs,[1] "reviewed" and is "familiar with the facts involved in [this] case." Based on that review of the facts, he affirms Drs. Koontz and Schkolne are, respectively, a general surgeon and an anesthesiologist, who maintain private practices in Winston-Salem, North Carolina, which are not affiliated with the Hospital. Dr. Koontz, as a properly credentialed practicing physician and surgeon, and Dr. Schkolne, as a properly credentialed practicing physician and anesthesiologist, make their own recommendations with regard to treatment possibili-

---

1. Dr. Lederer stated his duties "include assisting with litigation matters involving the hospitals."

ties. Their patients, in turn, elect to select or decline the recommendations or to seek another opinion. Both doctors have privileges at the Hospital, but neither doctor is an employee of the Hospital, is provided any financial or other benefits, or is governed by the Hospital's scheduling and leave provisions. Both doctors collect their own fees, and the Hospital does not receive any compensation for their professional services. The Hospital does not direct, supervise, or control any treatment rendered by the doctors to any of their patients, including Decedent.

Plaintiff objected to the admission of these affidavits, in part, on the ground there was no showing of Dr. Lederer's "personal knowledge" of the facts alleged in the affidavits. In opposition to the summary judgment motion, Plaintiff submitted, in pertinent part, the following policies of the Hospital:

Role of Anesthesiologist:

The anesthesiologist, in addition to the surgeon, is directly responsible for accepting or rejecting a patient for out[-]patient surgery. He or a CRNA or a Physician's Assistant will evaluate each patient prior to surgery and prior to pre-operative sedation. He will order all labs appropriate for anesthesia.

The anesthetic evaluation of the patient in the pre-operative phase is continued until the operative anesthesia is performed. The anesthesiologist is then continuously responsible for the safe conduct of the patient in the recovery phase. He will be available to evaluate and treat problems in the Out-Patient Department as they arise.

Role of the Physician:

The attending physician is responsible for helping determain [sic] the candidacy of patient for surgery. He will be responsible for explaining the surgery, risks and possible complications as well as initiate the pre-operative instruction to the patient. He is also responsible for post-operative care and follow up of surgery procedure after discharge.

. . . .

A. OUTPATIENTS:

Consists of those patients who are admitted for surgical procedures with discharge the same day anticipated. These patients

will generally consist of the American Association of Anesthesiology Classification I through III with the approval of the physician responsible for care and the anesthesiologist. . . . All patients require approval by the attending surgeon and the anesthesiology department.

. . . .

C. Observation Patients:

Consists of those patients admitted for medical or surgical procedures [sic] which may need additional recovery time up to 24 hours post surgery. . . . The decision to observe the patient is made by the patient's physician and or anesthesiologist and can be determined at any point in his hospital stay.

. . . .

II. Role of the Anesthesiologist [in Pre-Operative Assessment and Anesthesia Care]: The anesthesiologist, physician assistant or CRNA will be responsible for physically assessing the patient for anesthesia risk. All appropriate labs, EKG and chest x[-]ray will be ordered and evaluated prior to surgery. The patient will be classified according to the American Society of Anesthesiologist risk classification. The patient will have an understanding of the anesthesia plan and the anesthesia consent will be signed and witnessed.

The anesthesiologist may determine that surgery is inadvisable at this time due to a need for further evaluation or treatment of underlying problems which would increase the patient's perioperative risk. It is therefore at the discretion of the anesthesiologist to postpone or cancel the surgery. This will be discussed with the surgeon and possibly other consultants.

Furthermore, the Hospital policies provide, with respect to the "[m]edical direction" of "Out-Patient Department," that "Dr. Schkolne" and members of FAA are: (1) "responsible for assessing each patient pre-operatively and post-operatively"; (2) "participants in evaluating quality and appropriateness of services rendered by" the Out-Patient Department; (3) "present in the [H]ospital before pre-operative sedation medications are given and at all times when anesthesia is being administered and during post-operative recovery"; (4) "called on to medicate patients pre-operatively and post-operatively";

(5) "responsible for instructing patients as to which of their medication to take prior to surgery"; (6) "responsible for discharge of the patient from [the Post Anesthesia Care Unit] PACU and Out-Patient Department"; and (7) "responsible for ordering appropriate lab tests needed for the individual patient specific to his/her needs specific to the surgery." Additionally, members of FAA "[w]ill provide consultation to the medical staff in such anesthesia fields," such as, "respiratory care, spinal problems in pain relief and CPR."

---

The issues are whether: (I) facts included in an affidavit, in support of summary judgment, are based on the "personal knowledge" of the affiant when the affiant asserts he has "reviewed" and is "familiar" with those facts; and (II) (A) the Agreement and the Hospital policies present a genuine issue of material fact that the Hospital and Dr. Schkolne were in an agency relationship; (B) the Hospital satisfied its burden of establishing a complete defense to Plaintiff's vicarious liability claim against the Hospital based on Dr. Koontz's alleged negligence.

I

[1] Affidavits supporting a motion for summary judgment must "be made on personal knowledge." N.C.G.S. § 1A-1, Rule 56(e) (1999); *White v. Hunsinger*, 88 N.C. App. 382, 384, 363 S.E.2d 203, 204 (1988). Although a Rule 56 affidavit need not state specifically it is based on "personal knowledge," *Middleton v. Myers*, 41 N.C. App. 543, 546, 255 S.E.2d 255, 256 (1979), *aff'd*, 299 N.C. 42, 261 S.E.2d 108 (1980), its content and context must show its material parts are founded on the affiant's personal knowledge, *Fuller v. Southland Corp.*, 57 N.C. App. 1, 5, 290 S.E.2d 754, 757 (Rule 56 affidavits are sufficient if they "can be interpreted" to be based on personal knowledge), *disc. review denied*, 306 N.C. 556, 294 S.E.2d 223 (1982). Our courts have held affirmations based on "personal[] aware[ness]," *Stanley v. Walker*, 55 N.C. App. 377, 378-79, 285 S.E.2d 297, 298-99 (1982), "information and belief," *Blackwell v. Massey*, 69 N.C. App. 240, 244, 316 S.E.2d 350, 352 (1984); *see also Singleton v. Stewart*, 280 N.C. 460, 467, 186 S.E.2d 400, 405 (1972) ("advised and informed"); *Fuller*, 57 N.C. App. at 5, 290 S.E.2d at 757 ("believes"); *Metal Works, Inc. v. Heritage, Inc.*, 43 N.C. App. 27, 32, 258 S.E.2d 77, 81 (1979) ("informed, advised and belief"); *Boone v. Fuller*, 30 N.C. App. 107, 109, 226 S.E.2d 191, 193 (1976) ("believed"), and what the affiant "think[s]," *Peterson v. Winn-Dixie*, 14 N.C. App. 29, 32-33, 187 S.E.2d 487, 489-90 (1972), do not comply with the "personal knowledge" requirement of Rule 56(e).

Knowledge obtained from the review of records, qualified under Rule 803(6), constitutes "personal knowledge" within the meaning of Rule 56(e). *Bell Arthur Water Corp. v. N.C. Dept. of Transportation*, 101 N.C. App. 305, 309, 399 S.E.2d 353, 356, *disc. review denied*, 328 N.C. 569, 403 S.E.2d 507 (1991).

In this case, Dr. Lederer's affidavits indicate the assertions contained therein are based on a review of facts with which he is familiar. There is no statement the information contained in the affidavits are based on Dr. Lederer's "personal knowledge," nor is it clear from the content and context of the affidavits that the information was based on his personal knowledge.[2] With the exception of the matters contained in the Agreement, we cannot ascertain the source[3] of the information Dr. Lederer reviewed and on which he based his affidavits. Accordingly, with the exception of that portion of Dr. Lederer's affidavits relating to the Agreement, his affidavits in their present form do not reveal they were based on his "personal knowledge" and were not, therefore, admissible as evidence at the summary judgment hearing. Their admission by the trial court was, thus, error.

II

Under the doctrine of *respondeat superior*, a hospital is liable for the negligence of a physician or surgeon acting as its agent. *See Willoughby v. Wilkins*, 65 N.C. App. 626, 633, 310 S.E.2d 90, 95 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 698 (1984). There will generally be no vicarious liability on an employer for the negligent acts of an independent contractor. *Id.* Unless there is but one inference that can be drawn from the facts, whether an agency relationship exists is a question of fact for the jury. If only one inference can be drawn from the facts then it is a question of law for the trial court. *Hoffman v. Moore Regional Hospital*, 114 N.C. App. 248, 250, 441

---

2. We acknowledge that the portion of the affidavit incorporating the Agreement is based on personal knowledge.

3. If, for example, the affiant obtained information from another person and the information did not fall within a recognized exception to the hearsay rule, *see e.g.* N.C.G.S. § 8C-1, Rule 803 (1999), this information would not be based on the affiant's personal knowledge.

If, as another example, the affiant obtained information from a written record and the record did not comply with requirements of the business records exception to the hearsay rule, *see* N.C.G.S. § 8C-1, Rule 803(6) ("Records of Regularly Conducted Activity"), this information would, likewise, not be based on the affiant's personal knowledge, *c.f. Bell Arthur*, 101 N.C. App. at 309, 399 S.E.2d at 356.

S.E.2d 567, 569, *disc. review denied,* 336 N.C. 605, 447 S.E.2d 391 (1994).

The "vital test" in determining whether an agency relationship exists "is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Hayes v. Elon College,* 224 N.C. 11, 15, 29 S.E.2d 137, 140 (1944); *see also Willoughby,* 65 N.C. App. at 633, 310 S.E.2d at 95 (test is whether employer has right to control the "manner or method of doing work"). It is not dispositive that a contract denies the existence of an agency relationship, if in fact the relationship was that of agent-principal. *Ford v. Willys-Overland,* 197 N.C. 147, 149, 147 S.E. 822, 823 (1929).

## A

### *Dr. Schkolne*

[2] As to Dr. Schkolne, the Hospital presented evidence of the Agreement.[4] This Agreement states "[t]he Hospital shall neither have nor exercise any control . . . over the method and means by which the Anesthesiologists and FAA shall perform their work," the physicians are not limited from practicing outside the Hospital, the physicians were to receive no compensation from the Hospital, the parties were to bill the patient separately, and scheduling of the physicians at the Hospital was to be determined by FAA. This evidence satisfies the Hospital's initial burden of showing it had no right to control the manner or method of Dr. Schkolne's work at the Hospital, and thus, constitutes a complete defense to Plaintiff's vicarious liability claim against the Hospital based on Dr. Schkolne's alleged negligence. *See Forbes v. Par Ten Group, Inc.,* 99 N.C. App. 587, 593, 394 S.E.2d 643, 646 (1990) (movant for summary judgment has burden of showing complete defense to non-movant's claim), *disc. review denied,* 328 N.C. 89, 403 S.E.2d 824 (1991). The burden, thus, shifted to Plaintiff to present evidence showing a genuine issue of fact on the agency question. *Id.* On this point, Plaintiff presented the Hospital policies which outline some of the duties of its physicians, *i.e.,* "evaluate each patient prior to surgery," "responsible for the safe conduct of the patient in the recovery phase," "[determine] the candidacy of patient for surgery," and "responsible for explaining the surgery, risks and possible complications." These duties are general in nature and do

---

4. The other information contained in Dr. Lederer's affidavit is not to be considered, as decided in issue I of this opinion, in evaluating the correctness of the summary judgment.

not reveal any control by the Hospital over the manner and method of how Dr. Schkolne performed his duties. *See Hoffman*, 114 N.C. App. at 251, 441 S.E.2d at 569 (general policies of hospital are not indicative of control of details of physician's work). Thus, Plaintiff has failed in her burden of showing a genuine issue of material fact, and summary judgment for the Hospital on Dr. Schkolne's alleged negligence is affirmed.

B

*Dr. Koontz*

[3] The Hospital has presented no competent evidence of the nature of its relationship with Dr. Koontz.[5] Thus, it failed in its burden of showing a legal bar or complete defense to Plaintiff's vicarious liability claim against the Hospital based on the alleged negligence of Dr. Koontz. *Forbes*, 99 N.C. App. at 593, 394 S.E.2d at 646. Accordingly, Plaintiff had no burden to present any evidence on this issue, *id.*, and summary judgment for the Hospital on Dr. Koontz's alleged negligence must be reversed.

Reversed in part, affirmed in part, and remanded.

Judges HORTON and HUNTER concur.

———————————

5. Although the Hospital did present evidence, through Dr. Lederer's affidavit, of its relationship with Dr. Koontz, we have held, in issue I, that evidence was not admissible. The Agreement did not relate to Dr. Koontz.