NO. COA13-1050

NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

MICHELE LaFRAGE PETER and CARL
PETER,
     Plaintiffs,

     v.                                  Mecklenburg County
                                         No. 11 CVS 18251
JOHN VULLO, M.D., SOUTHEAST
ANESTHESIOLOGY CONSULTANTS, PLLC
f/k/a SOUTHEAST ANESTHESIOLOGY
CONSULTANTS, P.A., AMERICAN
ANESTHESIOLOGY OF THE SOUTHEAST,
PLLC, THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY d/b/a CAROLINAS
HEALTHCARE SYSTEM d/b/a CAROLINAS
MEDICAL CENTER, and MERCY
HOSPITAL, INC.,
     Defendants.


     Appeal by plaintiffs from order entered 12 April 2013 by

Judge Richard D. Boner in Mecklenburg County Superior Court.

Heard in the Court of Appeals 5 February 2014.


        *Van Laningham Duncan PLLC, by Stephen M. Russell, Jr., for
        plaintiff-appellants.*

        *Parker Poe Adams & Bernstein, LLP, by John H. Beyer, Jami
        J. Farris, and John D. Branson, for defendants John F.
        Vullo, M.D., Southeast Anesthesiology Consultants, PLLC,
        f/k/a Southeast Anesthesiology Consultants, P.A., and
        American Anesthesiology of the Southeast, PLLC.*

        *Lincoln Derr PLLC, by Tricia M. Derr, for defendants The
        Charlotte-Mecklenburg Hospital Authority d/b/a/ Carolinas
        Healthcare System d/b/a Carolinas Medical Center and Mercy
        Hospital, Inc.*

McCULLOUGH, Judge.

Plaintiffs Michele LaFrage Peter and Carl Peter appeal from an order granting summary judgment in favor of defendants John Vullo, M.D., Southeast Anesthesiology Consultants, PLLC f/k/a Southeast Anesthesiology Consultants, P.A., American Anesthesiology of the Southeast, PLLC, The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System d/b/a Carolinas Medical Center, and Mercy Hospital, Inc. Based on the reasons stated herein, we reverse in part and affirm in part.

## I.    Background

Plaintiffs Michele LaFrage Peter ("Ms. Peter") and Carl Peter ("Dr. Peter") are married. On 13 July 2012, plaintiffs filed an amended complaint against defendants John F. Vullo, M.D., Southeast Anesthesiology Consultants, PLLC f/k/a Southeast Anesthesiology Consultants, P.A., American Anesthesiology of the Southeast, PLLC, (collectively "the doctor defendants"), The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System d/b/a Carolinas Medical Center ("CMC"), and Mercy Hospital, Inc. ("CMC Mercy") (collectively "the hospital defendants"). Plaintiffs' claims included professional

negligence, loss of consortium by Dr. Peter, and *respondeat superior* liability.

Plaintiffs' complaint alleged the following: In February 2010, Ms. Peter suffered a severe sprain of her right ankle. In June 2010, after several months of physical therapy and two MRIs, Ms. Peter was referred to Dr. Robert Anderson, a foot and ankle specialist with OrthoCarolina in Charlotte, North Carolina. Dr. Anderson recommended surgical intervention and scheduled for it to take place on 22 December 2010 at CMC/CMC Mercy. On 22 December 2010, Ms. Peter underwent surgery at CMC/CMC Mercy. Plaintiffs alleged that defendants induced regional anesthesia in preparation for Ms. Peter's right ankle arthroscopic surgery. "Ms. Peter was given fentanyl and versed for sedation and remained in 'conscious sedation' throughout the procedure." Dr. Vullo, an employee of Southeast Anesthesiology Consultants, PLLC, f/k/a Southeast Anesthesiology Consultants, P.A. and/or American Anesthesiology of the Southeast, PLLC, was to administer a popliteal nerve block and a saphenous nerve block into an area behind Ms. Peter's right knee.

Plaintiffs alleged that at some point during the procedure, an unknown female attendant entered the room to assist Dr. Vullo as he was "having problems locating a nerve" to administer the

appropriate blocks. Plaintiffs assert that defendants failed to properly administer the nerve blocks and improperly administered repeated needle insertions, resulting in nerve damage. Ms. Peter stated that immediately following the injections, she experienced extreme pain and numbness in her right leg from which she still suffers. The pain and numbness has resulted in her inability to work and conduct day-to-day activities.

The hospital defendants and the doctor defendants filed motions for summary judgment on 25 February 2013 pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. The doctor defendants argued that plaintiffs' complaint was a medical malpractice action as defined by N.C. Gen. Stat. § 90-21.11. The doctor defendants contended that on 10 October 2012, a "Revised Consent Discovery Scheduling Order" was entered. This order set forth a schedule for the designation of expert witnesses and the completion of discovery prior to trial. Pursuant to this order, plaintiffs identified two retained medical expert witnesses that were to testify at trial: Dr. Steven Fiamengo, anesthesiologist of Newberry, South Carolina, and Dr. Robert Friedman, neurologist of Palm Beach, Florida. Both doctors were deposed and the doctor defendants argued that plaintiffs "failed to designate a qualified expert witness to

offer an opinion that Dr. Vullo deviated from the applicable standard of care." Furthermore, the doctor defendants argued that plaintiffs could not establish a prima facie case of medical malpractice.

On 5 April 2013, plaintiffs filed an affidavit of Dr. Fiamengo in response to defendants' motions for summary judgment. On 8 April 2013, doctor defendants filed a motion to strike Dr. Fiamengo's affidavit.

Following a hearing held at the 9 April 2013 term of Mecklenburg County Superior Court, the trial court entered an order granting defendants' motions for summary judgment and dismissing plaintiffs' claims with prejudice on 12 April 2013. The trial court also held the following:

> The Court declines to strike Dr. Fiamengo's Affidavit in its entirety, but is aware of and has applied the law as set forth in Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc., 39 N.C. App. 1, 249 SE2d 727 (1978) (holding that a party opposing a motion for summary judgment cannot create an issue of fact by filing an affidavit contradicting the prior sworn testimony of a witness).

From this 12 April 2013 summary judgment order, plaintiffs appeal.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted).

> The moving party bears the burden of establishing the lack of a triable issue of fact. If the movant meets its burden, the nonmovant is then required to produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a *prima facie* case at trial. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.

*Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 706, 567 S.E.2d 184, 187 (2002) (internal citations and quotation marks omitted).

## III. Discussion

On appeal, plaintiffs argue that the trial court erred (A) by granting summary judgment in favor of the doctor defendants; (B) in its consideration of Dr. Fiamengo's affidavit; (C) by granting summary judgment in favor of the hospital defendants; and (D) by granting summary judgment as to the loss of consortium claim. Because issues (A) and (B) are closely related, we will address them together.

A.    Summary Judgment in favor of the Doctor Defendants

and

B.    Affidavit of Dr. Fiamengo

Plaintiffs argue that that trial court erred by granting summary judgment in favor of the doctor defendants where plaintiffs forecast sufficient evidence to satisfy the requirements of a medical malpractice claim pursuant to section 90-21.12(a) of the North Carolina General Statutes.  Plaintiffs also argue that the trial court erred in its consideration of Dr. Fiamengo's affidavit.  We agree.

N.C. Gen. Stat. § 90-21.12(a) provides as follows:

> in any medical malpractice action as defined in G.S. 90-21.11(2)(a), the defendant health care provider shall not be liable for the payment of damages unless the trier of fact finds by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action[.]

N.C. Gen. Stat. § 90-21.12(a) (2013) (emphasis added).  "In order to maintain an action for medical malpractice, a plaintiff must offer evidence to establish (1) the applicable standard of care; (2) breach of that standard; (3) proximate causation; and

(4) damages." *Robinson v. Duke Univ. Health Systems*, __ N.C. App. __, __, 747 S.E.2d 321, 334 (2013) (citation omitted).

It is well established that

> [b]ecause questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony. Further, the standard of care must be established by other practitioners in the particular field of practice of the defendant health care provider or by other expert witnesses equally familiar and competent to testify as to that limited field of practice.
>
> Although it is not necessary for the witness testifying as to the standard of care to have actually practiced in the same community as the defendant, the witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care of similar communities.

*Smith v. Whitmer*, 159 N.C. App. 192, 195-96, 582 S.E.2d 669, 671-72 (2003) (internal citations and quotation marks omitted).

In the case *sub judice*, plaintiffs presented Dr. Fiamengo as their expert witness to testify that the medical care received by Ms. Peter did not comply with the applicable standard of care. Dr. Fiamengo is an anesthesiologist practicing at Crescent Anesthesia Associates, LLC, in South Carolina. Dr. Fiamengo was deposed first on 15 November 2012

and then subsequently provided an affidavit on 5 April 2013. The doctor defendants filed a motion to strike the affidavit, arguing that plaintiffs "served the contradictory affidavit of Dr. Fiamengo in an attempt to create an issue of fact and defeat these Defendants' Motion for Summary Judgment," prohibited by North Carolina law.

Our review establishes that during Dr. Fiamengo's 15 November 2012 deposition testimony, Dr. Fiamengo testified that although he believed Dr. Vullo's actions amounted to a deviation from the standard of care, he failed to demonstrate that he was familiar with the standard of care in the community where the injury occurred. Rather, Dr. Fiamengo appeared to be applying a national standard of care rather than the "same or similar community" standard required pursuant to N.C. Gen. Stat. § 90-21.12:

> [Counsel for the doctor defendants]: Have you arrived at some opinions in this case concerning the standard of care that applied to Dr. Vullo when he performed this peripheral nerve block for Mrs. Peter?
>
> [Dr. Fiamengo]: My opinion is that the nerve injury occurred during the performance of the block, that it should have been recognized with a sonogram, and that injection occurred nevertheless and it resulted in an injury. And because of the lack of recognition that the injury occurred -- that the injection occurred

intraneurally, that that was a deviation from the standard of care.

. . . .

[Counsel for the doctor defendants]: Now with respect to that standard of care opinion, are you taking into consideration in forming that opinion anything about the medical community in Charlotte as it existed in December 2010?

[Dr. Fiamengo]: No

. . . .

[Counsel for the doctor defendants]: So am I right, Dr. Fiamengo, that the standard of care that you're applying to assess Dr. Vullo's care in this case would be a national standard of care?

[Dr. Fiamengo]: Yes.

Dr. Fiamengo's 5 April 2013 affidavit, on the other hand, provided as follows:

8. I have reviewed information about the community of Charlotte, North Carolina, Mecklenburg County, and CMC Mercy Hospital for the period December 2010. I am familiar with the size of the population and economic condition of Charlotte, North Carolina. I am familiar with the level of care and resources available at the hospital, the facilities, and the number of health care providers for anesthesiology.

9. I have worked in communities similar to Charlotte and performed anesthesiology services in a hospital similar in size and resources to CMC Mercy.

10. The standard for performance of popliteal nerve blocks would not differ between my practice and an anesthesiologist in Charlotte, NC, given the similarities between my practice compared to the resources available to CMC Mercy and the experience of Dr. Vullo.

11. I am familiar with the prevailing standard of care for performing popliteal nerve blocks in the same or similar community to Charlotte, North Carolina in December 2010 by a physician with the same or similar training, education, and experience as Dr. Vullo.

12. Based on my review of this case, it is my opinion within a reasonable degree of medical certainty that the care of Dr. Vullo provided to Michele Peter was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the . . . performance of Ms. Peter's nerve block in December 2010.

13. The applicable standard in Charlotte in 2010 for an anesthesiologist such as Dr. Vullo required, among other things, that Dr. Vullo recognize and avoid intraneural injections while performing popliteal nerve blocks. Dr. Vullo failed to do so in this case, which directly caused Ms. Peter's injuries.

The trial court stated in its summary judgment order that it declined to strike Dr. Fiamengo's affidavit in its entirety, but noted that it had "applied the law as set forth in Wachovia

Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc., 39 N.C. App. 1, 249 SE2d 727 (1978) (holding that a party opposing a motion for summary judgment cannot create an issue of fact by filing an affidavit contradicting the prior sworn testimony of a witness)."

Plaintiffs argue, and we agree, that the trial court erroneously characterized Dr. Fiamengo's affidavit testimony as a tactic to contradict his own prior deposition testimony, in an attempt to create an issue of fact to defeat defendants' summary judgment motions. Rather, we believe that the circumstances are very similar to the facts found in *Roush v. Kennon*, 188 N.C. App. 570, 656 S.E.2d 603 (2008). In *Roush*, the trial court granted the defendants' motion to strike the plaintiff's proffered expert witness, Dr. Tuzman. The defendants argued, among other things, that Dr. Tuzman was not qualified to offer standard of care opinions because he had no familiarity with Charlotte, North Carolina as required pursuant to Rule 9(j)[1].

---

[1]Rule 9(j) of the North Carolina Rules of Civil Procedure provides for the requirements when pleading medical malpractice:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless: (1) The pleading specifically asserts that the medical care and all medical records

Specifically, defendants argued that a deposition prior to trial established that Dr. Tuzman was not qualified because he had never been to Charlotte, the location where the alleged injury occurred, knew nothing about the dental community in Charlotte, and believed in the existence of a national standard of care for all dentists. *Id.* at 574, 656 S.E.2d at 607. Our Court held that

> the record on appeal indicates that subsequent to his deposition, Dr. Tuzman sought to supplement his understanding of the applicable standard of care in the Charlotte metropolitan area by reviewing, *inter alia*, the demographic data for the Charlotte metropolitan area, the Dental Rules of the North Carolina State Board of Dental Examiners, and the deposition of [the defendant] Dr. Kennon regarding the procedures, techniques, and implements which he used while performing a molar extraction on plaintiff. After reviewing these sources, Dr. Tuzman was able to conclude that the standard of care for Atlanta, Georgia (in which he practiced), was the same standard of care that applied to the similar community of Charlotte, North Carolina. . . . Thus, we find that Dr. Tuzman possessed sufficient familiarity with

> pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.
N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2013).

> Charlotte and the practice of dentistry therein to testify as to the appropriate standard of care as required by N.C. Gen. Stat. § 90-21.12.

*Id.* at 576-77, 656 S.E.2d at 607-608.

The record before us indicates that subsequent to giving his deposition, Dr. Fiamengo reviewed information about the community of Charlotte and CMC Mercy for the period of December 2010, became familiar with the population size and economic condition of Charlotte, and became familiar with the level of care and resources available at the hospital, the facilities, and the number of health care providers for anesthesiology. Furthermore, Dr. Fiamengo testified that he had worked in communities similar to Charlotte and performed anesthesiology services in a hospital similar in size and resources to CMC Mercy. He testified that he was "familiar with the prevailing standard of care for performing popliteal nerve blocks in the same or similar community to Charlotte, North Carolina in December 2010 by a physician with the same or similar training, education, and experience as Dr. Vullo." Thus, we hold that the trial court erred by applying the holding in *Wachovia Mortgage Co.* to Dr. Fiamengo's affidavit.

Dr. Fiamengo testified that "[t]he applicable standard in Charlotte in 2010 for an anesthesiologist such as Dr. Vullo

required, among other things, that Dr. Vullo recognize and avoid intraneural injections while performing popliteal nerve blocks. Dr. Vullo failed to do so in this case, which directly caused Ms. Peter's injuries." Reviewing the evidence in the light most favorable to plaintiffs, plaintiffs offered sufficient evidence of (1) the applicable standard of care, (2) breach of that standard of care, (3) proximate causation, and (4) damages, successful to defeat defendants' summary judgment motion.

> When plaintiffs have introduced evidence from an expert stating that the defendant doctor did not meet the accepted medical standard, [t]he evidence forecast by the plaintiffs establishes a genuine issue of material fact as to whether the defendant doctor breached the applicable standard of care and thereby proximately caused the plaintiff's injuries. This issue is ordinarily a question for the jury, and in such case, it is error for the trial court to enter summary judgment for the defendant.

*Robinson,* __ N.C. App. at __, 747 S.E.2d at 335 (citation omitted).

Based on the foregoing reasons, we reverse the order of the trial court granting summary judgment in favor of the doctor defendants and remand to the trial court for further proceedings consistent with this opinion.

C.    Summary Judgment in Favor of the Hospital Defendants

Next, plaintiffs argue that there was sufficient evidence to support their claim that the hospital defendants were liable under the doctrine of *respondeat superior*. Plaintiffs argue that "an inference can be drawn that an agency relationship existed between Dr. Vullo and the Hospital Defendants" since CMC and CMC Mercy held themselves out as providing medical services to Ms. Peter under the doctrine of apparent agency. We disagree.

> Under the doctrine of *respondeat superior*, a hospital is liable for the negligence of a physician or surgeon acting as its agent. There will generally be no vicarious liability on an employer for the negligent acts of an independent contractor. Unless there is but one inference that can be drawn from the facts, whether an agency relationship exists is a question of fact for the jury. If only one inference can be drawn from the facts then it is a question of law for the trial court.

*Hylton v. Koontz*, 138 N.C. App. 629, 635, 532 S.E.2d 252, 257 (2000) (citations omitted).

"[A]pparent agency would be applicable to hold the hospital liable for the acts of an independent contractor if the hospital held itself out as providing services and care." *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 305, 628 S.E.2d 851, 861 (2006) (citation omitted).

Under this approach, a plaintiff must prove

> that (1) the hospital has held itself out as providing medical services, (2) the plaintiff looked to the hospital rather than the individual medical provider to perform those services, and (3) the patient accepted those services in the reasonable belief that the services were being rendered by the hospital or by its employees. A hospital may avoid liability by providing meaningful notice to a patient that care is being provided by an independent contractor.

*Id.* at 307, 628 S.E.2d at 862 (citation omitted).

Plaintiffs compare the facts of the present case to those found in *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 628 S.E.2d 851 (2006), and argue that a jury could decide that Ms. Peter accepted medical services in the reasonable belief that the services were being provided by the hospital defendants. After thoughtful review, we find the facts of the present case distinguishable.

In *Diggs*, the plaintiff filed a medical malpractice action arising out of a gall bladder surgery performed at Forsyth Medical Center ("FMC"). The plaintiff alleged that Forsyth Memorial Hospital, Inc., Novant Health, Inc., and Novant Health Triad Region, L.L.C. were vicariously liable for the negligence of the hospital nursing staff and the team assigned to administer anesthesia to the plaintiff. *Id.* at 292, 628 S.E.2d at 853. The trial court granted summary judgment in favor of

the Forsyth Memorial Hospital, Inc., Novant Health, Inc., and Novant Health Triad Region, L.L.C. *Id.* Our Court affirmed summary judgment for Novant Health Inc. and Novant Health Triad Region, L.L.C., but reversed summary judgment as to Forsyth Memorial Hospital, Inc. ("the hospital"). *Id.*

The *Diggs* plaintiff chose to have Dr. Ismael Goco, who had hospital privileges at FMC, perform her surgery. On 12 October 1999, the plaintiff was admitted to FMC, which is operated by the hospital. The plaintiff's surgery required general anesthesia. Piedmont Anesthesia & Pain Consultants, P.A. ("Piedmont") had a contract with the hospital that granted Piedmont the exclusive right to provide anesthesia services at FMC. *Id.* at 293, 628 S.E.2d at 854. Piedmont employees, Dr. McConville and nurse Sheila Crumb, "were responsible for administering anesthesia to [the] plaintiff through an induction and intubation process. Ms. Crumb performed the intubation, which involved inserting a tube into [the] plaintiff's trachea, under the supervision of Dr. McConville." *Id.* During the plaintiff's procedure, her esophagus was perforated, resulting in injuries. *Id.* The *Diggs* plaintiff argued that she was not aware that Dr. McConville and Ms. Crumb were not employees of the hospital and argued that the hospital was vicariously liable

for the negligence of Dr. McConville, Ms. Crumb, and Piedmont. *Id.* at 293-94, 628 S.E.2d at 854. Our Court held that the plaintiff failed to present sufficient evidence to establish a *prima facie* case of actual agency and then turned to the issue of liability based on apparent agency. *Id.* at 301, 628 S.E.2d at 858.

Our Court found that the plaintiff had presented sufficient evidence to meet the test of apparent agency based on the following evidence: (1) the hospital had a Department of Anesthesiology with a Chief of Anesthesiology and a Medical Director, "a fact that a jury could reasonably find indicated to the public that FMC was providing anesthesia services to its patients." *Id.* at 307-308, 628 S.E.2d at 862; (2) the hospital chose to provide anesthesia services by contracting with Piedmont exclusively, with Piedmont doctors serving as the hospital's Chief of Anesthesiology and Medical Director; (3) the plaintiff and other surgical patients had no choice as to who would provide anesthesia services for their operations; and (4) the plaintiff signed a "Consent to Operation and/or Other Procedures" form that was printed on FMC letterhead which distinguished between the plaintiff's personal physician and unnamed anesthesiologists. *Id.* at 308, 628 S.E.2d at 863.

Based on the foregoing, our Court held that "[a] jury could decide based on this [consent] form that plaintiff was, through this form, requesting anesthesia services from FMC and that – given the distinction made between plaintiff's personal physician and the unnamed anesthesiologist – plaintiff was accepting those services in the reasonable belief that the services would be provided by the hospital and its employees." *Id.* at 308-309, 628 S.E.2d at 863.

In the case *sub judice*, the record indicates that as of December 2010, Dr. Vullo was not an employee of the hospital defendants. Dr. Vullo was an employee of American Anesthesiology of the Southeast, PLLC, which had acquired Southeast Anesthesiology Consultants in October 2010. Dr. Vullo had hospital staff privileges at CMC Mercy and provided anesthesia services to Ms. Peter at CMC Mercy. Nonetheless, our Court has established that "evidence that a physician has privileges at a hospital is not sufficient, standing alone, to make the physician an agent of the hospital[.]" *Id.* at 301, 628 S.E.2d at 859.

Distinguishable from the facts found in *Diggs*, Ms. Peter was provided meaningful notice from the hospital defendants that the anesthesiologists may be independent contractors. In fact,

the hospital defendants expressly disclaimed that independent contractors providing certain services at the hospital defendants' facilities were not agents of the hospital defendants.

In a 11 July 2012 deposition, Ms. Peter testified that prior to her surgery on 22 December 2010, she signed a "Confirmation of Consent for Procedure or Operation" form ("the consent form") and "Request for Treatment and Authorization Form" ("the authorization form"). The consent form included a clause, right above the signature line, that stated the following:

> I UNDERSTAND THAT MY PHYSICIAN, THE *ANESTHESIOLOGISTS*, RADIOLOGISTS, PATHOLOGISTS, AND OTHER HEALTH CARE PROVIDERS MAY NOT BE EMPLOYED BY OR BE AGENTS OF THE HOSPITAL, AND I AGREE THE HOSPITAL IS NOT RESPONSIBLE OR LIABLE FOR WHAT THEY DO OR FAIL TO DO.

(emphasis added). Furthermore, the authorization form contained a provision entitled "Notice of Independent Contractors" which provided as follows:

> I understand that [The Charlotte-Mecklenburg Hospital Authority] has contracted with certain independent professional groups for such groups to exclusively provide certain services at [The Charlotte-Mecklenburg Hospital Authority] facilities, including but not limited to Charlotte Radiology, P.A., *Southeast Anesthesiology Consultants,*

> *P.A.*, Carolinas Pathology Group, P.A., Southeast Radiation Oncology Group, P.A., and Emergency Medicine Physicians, P.A. I understand that these professional groups are *independent contractors*, are not employees or agents of [The Charlotte-Mecklenburg Hospital Authority], and are not subject to control or supervision by [The Charlotte-Mecklenburg Hospital Authority] in their delivery of professional services.

(emphasis added).

Next, plaintiff argues that the consent and authorization forms are insufficient to defeat plaintiffs' apparent agency claim when contrasting it with the release form found in *Ray v. Forgy*, __ N.C. App. __, 744 S.E.2d 468 (2013). We do not find plaintiffs' arguments persuasive.

In *Ray*, the issue before the Court was whether the plaintiff patient looked to the hospital rather than the individual medical provider, Dr. Forgy, to perform her surgeries. *Id.* at __, 744 S.E.2d at 471. Our Court held that there were no issues of material fact regarding apparent agency where:

> [b]efore [the patient's procedures, the patient] signed request for treatment forms. In a section labeled "Designation(s)," she checked the box labeled "Physician" and wrote in "Dr. Forgy." Additionally, [the patient] separately checked a box labeled "Grace Hospital Personnel." [The patient's husband, who is also a plaintiff,] also signed nearly identical consent forms

before allowing a catheter to be placed and allowing a drain to be put in his wife's abdomen. This suggests that [the patient] looked to Dr. Forgy separate and distinct from Grace Hospital and its personnel to receive medical treatment.

*Id.* In addition, our Court found that the release form, in large print just above the signature line, provided explicit notice regarding the employment status of Grace Hospital physicians:

that many of the physicians on the staff of Grace Hospital are not employees or agents of the hospital, but rather, are independent contractors who have been granted the privilege of using its facilities for the care and treatment of patients. . . . My signature below indicates that I have read and understand the above information.

*Id.*

Plaintiffs contend that the *Ray* release document specifically identified the physician who allegedly violated the standard of care while here, there was "no identification of the treating physician on the [h]ospital [d]efendants' release form, or a quantification of the likelihood of Mrs. Peter being treated by an unidentified non-employee physician." However, our review reveals that Ms. Peter's consent form separately listed Dr. Anderson, the foot and ankle specialist of OrthoCarolina, as the physician performing Ms. Peter's operation

on 22 December 2010 from the hospital CMC Mercy. As found in *Ray*, this suggests that Ms. Peter looked to Dr. Anderson, separate and distinct from CMC Mercy and its personnel, to receive medical treatment. Although the consent and authorization forms did not identify Dr. Vullo by name, the consent form identified that "anesthesiologists . . . may not be employed by or be agents of the hospital." The authorization form also provided that "certain independent professional groups" were independent contractors and identified a non-comprehensive list of the independent professional groups that included Southeast Anesthesiology Consultants, P.A., a predecessor to Dr. Vullo's employer American Anesthesiology of the Southeast, PLLC. Therefore, comparing the facts of *Ray* and the facts in the case before us, we find them to be more analogous than dissimilar as plaintiffs argue.

Because it is clear from the record that the hospital defendants did not represent or hold out that the providers of Ms. Peter's anesthesia services were agents of the hospital defendants, plaintiffs' apparent agency arguments must fail. *See Holmes v. Univ Health Serv. Inc.,* 205 Ga. App. 602, 603, 423 S.E.2d 281, 283 (1992) (the plaintiff's arguments that an apparent agency relationship existed failed where forms that the

plaintiff signed explicitly stated that "[p]hysicians providing medical services within this hospital are not employees of University Hospital. Each physician is an independent contractor"); *Cantrell v. Northeast Ga. Med Ctr.,* 235 Ga. App. 365, 365, 508 S.E.2d 716, 718 (1998) (no holding out by the hospital of the doctor as anything but an independent contractor where a sign over the registration desk advised patients that the doctors were independent contractors and the consent for treatment form also stated that "physicians . . . are not hospital employees, but are independent contractors[.]"); *Compare with Jennison v. Providence St. Vincent Med. Ctr,* 174 Or. App. 219, 234, 25 P.3d 358, 367 (2001) (finding that it was reasonable for the patient to assume that the radiologist was a hospital employee where nowhere on the consent form did it indicate that the radiologists were independent contractors). We affirm the order of the trial court granting summary judgment in favor of the hospital defendants.

## D. Loss of Consortium Claim

Because we hold that summary judgment was erroneously entered as to plaintiffs' claims of negligence against defendant doctors, we also hold that Dr. Peter's loss of consortium claim, derivative of Ms. Peter's negligence claim, should have survived

a motion for summary judgment.  The trial court erred in granting summary judgment in favor of defendants on Dr. Peter's loss of consortium claim.

Reversed in part; affirmed in part.

Judges HUNTER, Robert C. and GEER concur.