PARKER, Justice
(concurring in part and dissenting in part).
I concur as to the affirmance of the summary judgment in favor of the emergency-room nurses. I respectfully dissent as to the affirmance of the summary judgment in favor of Colbert County Northwest Alabama Health Care Authority d/b/a Helen Keller Hospital (“HKH”) on Melissa Bain’s claim that HKH was vicariously liable for Dr. Preston Wigfall’s alleged negligence. Specifically, I find that Bain presented substantial evidence from which the jury could conclude that HKH is vicariously liable for the acts of Dr. Wigfall, its emergency-room physician.
I agree with the recitation of the law in the main opinion on apparent authority and agency by estoppel; I respectfully disagree, however, with the application of that law and the resulting conclusion. First, Brown v. St. Vincent’s Hospital, 899 So.2d 227 (Ala. 2004), is distinguishable for reasons in addition to those given in the main opinion. Second, the imposition of liability under these facts is consistent with the majority of jurisdictions that have considered this issue.
In Brown, 899 So.2d at 227, this Court found that the patient failed to carry her burden of establishing by substantial evidence a genuine issue of material fact concerning her claims of apparent authority and agency by estoppel. The patient had alleged that she saw a single television advertisement that caused her to believe the hospital was the employer of obstetricians, including the doctor she visited. 899 So.2d at 239. However, the patient signed a consent form expressly indicating that her doctor was not an employee of the hospital but was an independent contractor. The form provided:
“ ‘PHYSICIANS: I understand that my doctor and other doctors who provide care to me while I am in the hospital (such as Emergency Department doctors, doctors who read X-rays and test specimens removed from me, and doctors and Certified Registered Nurse Anesthetists who give anesthesia) are not the agents, servants or employees of St. Vincent’s Hospital, but are individuals practicing independently at the hospital.’ ”
899 So.2d at 240. Moreover, the patient visited the doctor on numerous occasions, but only one of those visits was on the hospital premises. Additionally, though she did call the hospital after seeing the advertisement to ask if “they had any obstetricians who were taking new patients,” the patient ultimately was the one who selected her doctor. She stated that the hospital gave her only one doctor’s name, but she did not say that she asked for any more names or that she lacked the freedom to select a doctor elsewhere. Accordingly, the Court found that the patient’s belief that the doctor was an employee of the hospital was not an objectively reasonable one so as to overcome the hospital’s motion for a summary judgment.
The facts of this case are distinguishable from those in Brown. First, there is no evidence in this case indicating that Bain and her husband Heath were made aware through a consent form, as in Brown, or through any other means, that the emergency-room physician who treated Heath was anything other than an employee of HKH. To the contrary, every form signed by the Bains contained the name Helen Keller Hospital, and one form specifically stated “Thank you for choosing Helen Keller Hospital for your care today” and listed Dr. Wigfall’s name in the “care provided by” field. This fact alone distinguishes this case from Brown, but numerous additional facts also distinguish the facts of this case from those in Brown.
Here, the Bains sought the emergency services of the hospital generally, not the *970 services of a particular physician, as did the patient in Brown. There is no evidence indicating that the Bains had had any prior relationship with Dr. Wigfall or that they had any choice in his selection as Heath’s emergency-room doctor. Rather, the evidence indicates that HKH provided them with the services of Dr. Wigfall.
Further, contrary to. Brown, the Bains were on the premises of HKH when Heath was treated in HKH’s emergency room by Dr. Wigfall. In Brown, the patient visited the doctor numerous times at an office not on the hospital premises.
Significantly, -absent from Brown but present here, Dr. Wigfall wore a badge, presumably provided by HKH, that displayed the name “Helen Keller Hospital.” A badge is indicative of employment. And all-the emergency-room staff (who Bain assumed, correctly, were employees of the hospital) took direction from Dr. Wigfall. Based on these facts, Bain asserted that she assumed Dr, Wigfall was an HKH employee. Unlike in Brown, there was sufficient evidence here to make Bain’s belief an objectively reasonable one. Thus, here, unlike in Brown, there is sufficient evidence of apparent authority to create a genuine issue of material fact concerning Bain’s claims of apparent authority and agency by estoppel.
The main opinion notes that even if there is sufficient evidence of “holding out” by HKH of Dr. Wigfall as its agent based on Dr. Wigfall’s badge and the medical forms containing the hospital’s name, there is insufficient evidence of reliance on Bain’s part. I disagree. One court has said: “ ‘Reliance ... is established when the plaintiff “looks to” the hospital for services, rather than to an individual physician.’” Burless v. West Virginia Univ. Hosps., Inc., 215 W.Va. 765, 777, 601 S.E.2d 85, 97 (2004) (quoting Mejia v. Community Hosp. of San Bernardino, 99 Cal.App.4th 1448, 1454, 122 Cal.Rptr.2d 233, 237 (2002)); see also Gilbert v. Sycamore Mun. Hosp., 156 Ill.2d 511, 525, 622 N.E.2d 788, 796, 190 Ill.Dec. 758, 766 (1993) (“The element of justifiable reliance on the part of the plaintiff is. satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician.”). This principle is consistent with this Court’s decision in Union Oil Co. v. Crane, 288 Ala. 173, 180, 258 So.2d 882, 887 (1972), in which this Court found it dispositive that the plaintiff did business with the alleged principal corporation only because of a personal - relationship with the alleged agent, not because of any reliance on the reputation of the corporation. Thus, the Union Oil Court found insufficient evidence to establish reliance. Id. Here, to the contrary, the Bains did not visit the emergency room because of a relationship with any particular doctor and did not even choose their doctor once there; rather, they visited the emergency because of the reputation of HKH—they looked to HKH for services rather than to an individual physician. Bain alleged in her affidavit that the Bains sought the care of HKH because they believed “it had the best reputation for caring for patients in this, area” and that it “would provide the best emergency care and treatment,” The doctor provided by HKH is a crucial aspect of that emergency care and treatment the Bains trusted HKH to provide. These facts are indicative of reliance and are at least sufficient to make the question one of fact for the jury.
Moreover, the imposition of vicarious liar bility on hospitals for the actions of its emergency-room physicians is neither new nor novel. In fact, most jurisdictions that have considered this issue have imposed liability on hospitals in the emergency-room context. See Sanchez v. Medicorp Health Sys., 270 Va. 299, 307, 618 S.E.2d 331, 335 (2005) (noting that “the majority *971 of jurisdictions that have addressed the issue presently before us have decided, on the basis of apparent agency or agency by estoppel, to impose vicarious liability on hospitals for the negligence of emergency room physicians who were not employees of the hospitals but independent contractors”); Gilbert, 156 Ill.2d at 522, 622 N.E.2d at 794, 190 Ill.Dec. at 764 (“We join the many courts that have reached this conclusion.”); 64 A.L.R.6th 249 §§ 13-14 (2011) (collecting decisions in which courts have considered whether to impose liability on a hospital for the negligence of an independent physician for emergency-room treatment of a patient under a theory of apparent agency or agency by estop-pel and illustrating that most jurisdictions have come out in favor of liability).
In cases where hospitals were not held to be vicariously liable for the acts of emergency-room physicians, there was some indication by the hospital that its emergency-room physicians were not employees but were instead independent contractors. See, e.g., Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 950 (Tex. 1998) (noting that hospital posted signs in the emergency room notifying patients that physicians were independent contractors and provided patients with consent forms that informed patients of physicians’ independent-contractor status); Peter v. Vullo, 234 N.C.App. 150, 162, 758 S.E.2d 431, 439 (2014) (noting that hospital expressly gave notice via consent form that ■physician was an independent contractor); Cantrell v. Northeast Georgia Med. Ctr., 235 Ga.App. 365, 366, 508 S.E.2d 716, 718 (1998) (noting that hospital posted sign over registration desk and gave patients treatment-consent forms advising patients that physicians were not hospital employees); and Holmes v. University Health Sery., Inc., 205 Ga.App. 602, 603, 423 S.E.2d 281, 283 (1992) (noting that forms plaintiff signed explicitly stated: “Physicians providing medical services within this hospital are not employees of University Hospital. Each physician is an independent contractor.”).
' To the contrary, where patients were given no indication that the emergency-room physicians were independent contractors, courts have held that the question of apparent authority was at least a question for the jury—the trier of fact. See, e.g., Jennison v. Providence St. Vincent Med. Ctr., 174 Or.App. 219, 234, 25 P.3d 358, 367 (2001) (finding it was reasonable for the patient to assume -that the radiologist was a hospital employee where nowhere on the consent form did it indicate that radiologists were independent contractors); Abdul-Majeed v. Emory Univ. Hosp., 213 Ga.App. 421, 423, 445 S.E.2d 270, 272 (1994) (holding that a question of fact existed regarding whether the hospital held the doctor out as its agent if the hospital provided the doctor without explicitly informing the patient that the doctor was not its employee).
Here, HKH not only took affirmative action that encouraged the Bains to think that Dr. Wigfall was its employee-—giving Dr. Wigfall a badge with the hospital’s name and providing the Bains with forms headed by the hospital’s name—HKH also failed to take any reasonable effort to disabuse the Bains of that notion. Unlike the hospitals in the cases discussed above, where the hospitals took some measure to inform patients that the emérgency-room doctors were hot employees of the hospital, HKH did nothing to indicate that Dr, Wigfall was not its employee.
Additionally, courts finding sufficient evidence to support vicarious liability have emphasized the patient's reliance on the hospital, rather than on a particular doctor, to provide medical services, which is often the case in the emergency-room context. See, e.g., Porter v. Sisters of St.. Mary, 756 F.2d 669 (8th Cir. 1985) (holding evidence of apparent authority insufficient *972 where patient sought services of particular doctor rather than services of hospital generally); Barrett v. Samaritan Health Servs., 153 Ariz. 138, 735 P.2d 460 (Ct. App. 1987) (holding issue of vicarious liability was for jury where patient did not have opportunity to choose physician, who was provided by hospital); and Gilbert, 156 Ill.2d at 526, 622 N.E.2d at 796, 190 Ill.Dec. at 766 (“Decedent did not ask for Dr. Frank, who was not decedent’s physician and who had never before met decedent. Rather, Dr. Frank was another KMA physician who merely happened to be covering the emergency room the day decedent was taken there.”).
In light of the foregoing, I would follow the majority of jurisdictions and conclude that under the facts presented here there is at least a question of fact as to the alleged apparent-agency relationship between Dr. Wigfall and HKH. Accordingly, I would reverse the summary judgment in favor of HKH on this issue.